JUSTICE GRAY
delivered the Opinion of the Court.
Gaylen Marsh (Marsh) appeals the decision of the Fifteenth Judicial District Court, Sheridan County, affirming the Sheridan County Recount Board’s (Recount Board) Certificate of Recount which declared Mike Overland the winner of the 1994 Sheridan County Sheriff’s election. We affirm.
Marsh raises the following issues on appeal:
1. Did the District Court err in concluding that the surname “Marsh” alone on a write-in ballot was insufficient to determine the intent of the voter as required by § 13-15-202(3), MCA?
2. Did the District Court err in concluding that the Recount Board had jurisdiction to disallow votes cast with only the surname “Marsh”?
3. Did the election judges’ failure to properly identify rejected ballots compromise the validity of the entire election?
4. Did the District Court abuse its discretion in awarding attorney’s fees to Mike Overland?
Three candidates sought the office of Sheridan County Sheriff in the election held on November 8, 1994. Mike Overland (Overland) and Paul George (George) ran as the Republican and Democrat candidates, respectively. Marsh, who had lost to George in the Democrat primary, initiated a vigorous write-in campaign. He filed a timely declaration of intent to rim as a write-in candidate and publicized his candidacy through the local media, as well as with private posters and mailings. The majority of Marsh’s advertising used his full name, “Gaylen Marsh.” He also sent potential voters “Gaylen Marsh” stick *24 ers which could be placed in the write-in portion of Sheridan County’s paper ballots.
Following the election, Sheridan County election officials announced that Marsh had won the election. The initial election results indicated that Marsh received 909 votes, Overland received 902 votes and George received 664 votes. Overland petitioned for a recount pursuant to § 13-16-201(1), MCA.
The Sheridan County Recount Board recounted the votes in the sheriff’s election under instruction from the Sheridan County Election Administrator to disallow any ballots which did not specify “Gaylen” or “G.” Marsh. Pursuant to this instruction, the Recount Board did not count the following votes:
12 ballots “Marsh”
1 ballot “Mr. Marsh”
1 ballot “David Marsh”
1 ballot “Dave Marsh”
1 ballot “Gilbert Marsh”
1 ballot “Lloyd Marsh”
1 ballot Misspelled or illegible
22 ballots No “X” marked in the box preceding the name “Gaylen Marsh”
With the above-listed votes disallowed, the recount showed 903 votes for Overland, 897 votes for Marsh and 664 votes for George. As a result, election officials declared Overland the winner of the election for Sheridan County Sheriff.
Marsh filed this four-count action against Overland and the Recount Board captioned “PETITION for WRIT of PROHIBITION, WRIT of MANDAMUS, for JUDICIAL REVIEW and CONTESTING ELECTION.” District Court Judge M. James Sorte issued alternative writs of prohibition and mandamus, but later quashed the alternative writs and dismissed the Recount Board as a party. Marsh subsequently moved to substitute Judge Sorte and District Court Judge John C. McKeon assumed jurisdiction.
Following dismissal of an additional count of Marsh’s complaint on motion of both parties, the only claim before the court was a § 13-36-101, MCA, election contest. Marsh petitioned the court to set aside Overland’s election pursuant to § 13-36-102(2), MCA, and to issue a certificate of election in his favor pursuant to § 13-16-418, MCA. He argued that the votes for “Marsh” sufficiently demonstrated the *25 voters’ intent to vote for him and, therefore, that the twelve “Marsh” votes must be added to his total.
After a hearing held pursuant to §§ 13-36-206 and 13-36-207, MCA, the District Court issued its findings of fact, conclusions of law, and order affirming the Recount Board’s decision. The court concluded that the Recount Board properly excluded the “Marsh” votes from Marsh’s total and directed that a certificate of election be issued declaring Overland elected as Sheridan County Sheriff. The court also determined that Overland was entitled to costs and attorney’s fees under § 13-36-205, MCA. Marsh appeals.
Issue 1
Did the District Court err in concluding that the surname “Marsh” alone on a write-in ballot was insufficient to determine the intent of the voter as required by § 13-15-202, MCA?
We review a district court’s conclusions of law to determine if they are correct. Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762.
While the specific issue now before us regarding voters’ intent in marking write-in ballots is one of first impression in Montana, both statute and case law on the subject of determining voters’ intent require that ballots be disallowed unless the electors’ intent can be established with reasonable certainty. Section 13-15-202(3), MCA, states:
A ballot or part of a ballot is void and shall not be counted if the elector’s choice cannot be determined. If part of a ballot is sufficiently plain to determine the elector’s intention, the election judges shall count that part.
This Court has consistently disallowed ballots when the voters’ intent does not plainly appear. See Rennie v. Nistler (1987), 226 Mont. 412, 735 P.2d 1124; Peterson v. Billings (1939), 109 Mont. 390, 96 P.2d 922. We recently summarized the rationale underlying our consistent rejection of ballots where the voters’intent is not clear:
“[T]he paramount and ultimate object of all election laws under our system of government is to obtain an honest and fair expression from the voters upon all questions submitted to them.” When such expression cannot be gleaned without speculation, however, the vote is to be voided, to insure a standard of objectivity in our election process. [Citation omitted.]
Spaeth v. Kendall (1990), 245 Mont. 352, 354-55, 801 P.2d 591, 593.
*26 On the facts presently before us, the “Marsh” votes cannot be credited to Marsh without speculating about the voters’ intent. There are twenty-eight registered voters in Sheridan County with the surname “Marsh.” Four of these individuals — David, Gilbert, Lloyd and appellant Gaylen Marsh — each received at least one write-in vote in the sheriff’s election. Moreover, at least four voters clearly cast ballots for a Marsh other than Gaylen: Gilbert and Lloyd Marsh each received one vote and David Marsh received two. While Gaylen Marsh received almost 900 votes, it cannot be determined without speculation that the “Marsh” votes were intended for Gaylen and not for Gilbert, Lloyd or David or, indeed, for one of the approximately two dozen other registered voters in Sheridan County surnamed Marsh.
Marsh argues that, because he was the only write-in candidate who filed a declaration of intent as required by § 13-10-211, MCA, and campaigned for the office, he was the only eligible write-in candidate; thus, he contends that the “Marsh” votes must have been intended for him. While it is true that Marsh was the only official write-in candidate for sheriff under § 13-10-211, MCA, nothing in that statute mandates that “Marsh” votes be counted for him. The effect of write-in votes for persons who have not filed a declaration of intent is controlled by § 13-15-202(l)(b), MCA, which provides that “judges may not count or record write-in votes for candidates who have not filed a declaration of intent as provided in 13-10-211....”
In addition, Marsh’s argument ignores the undisputed fact that voters wrote in the names of Marshes other than Gaylen. Under the facts before us, it is entirely conceivable that some of the “Marsh” ballots were intended for Gilbert, Lloyd or David Marsh.
Moreover, the fact that Marsh was the only write-in candidate eligible to be elected does not defeat the voting public’s right to vote for whomever they wish. U.S. Const. amend. XV, § 1; Awareness Group v. School District No. 4 (1990), 243 Mont. 469, 474, 795 P.2d 447, 450 (citing Wesberry v. Sanders (1964), 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481). Gilbert, Lloyd and David Marsh were not eligible to be elected sheriff because they failed to file a declaration of intent with election officials. However, their ineligibility for office does not restrict the voting public’s right to vote for the person of their choice.
Marsh urges this Court to adopt the so-called “substantial compliance” test utilized by several jurisdictions in interpreting a voter’s intent. In Meyer v. Lamm (Colo. 1993), 846 P.2d 862, for example, the Colorado Supreme Court allowed votes for “Lamm,” “Miss Lamm,” *27 “Ms. Lamm” and “Mrs. Lamm” to be counted in favor of write-in candidate Peggy Lamm, while rejecting ballots containing an incorrect first name or initial. Lamm, 846 P.2d at 877-78. The Colorado court reasoned:
The evidence adduced at the hearing indicated that Peggy Lamm was the only person in District 13 that had campaigned as a write-in candidate for representative. She was the only person who had filed the requisite affidavit of intent to run and was thus the only person other than Drew Clark eligible to be elected to the office. There was evidence that Lamm’s campaign was extensive and vigorous and that she had obtained the editorial endorsement of a number of newspapers in the metropolitan area. Given these facts, as well as the absence of any official instructions to voters that a valid write-in vote must contain more than a last name, we find that the intention of these voters to vote for Peggy Lamm can be ascertained with the requisite certainty.
Lamm, 846 P.2d at 877.
While Lamm is factually similar to the present case, we disagree with the result reached by the Colorado court. We fail to see how votes for “Lamm” can reflect the “requisite certainty” of intent in light of votes cast in the same election for “Nancy Lamm,” as an example, which the court correctly rejected as insufficiently demonstrating the voters’ intent to vote for Peggy Lamm. In our view, the voters’ intent under such a factual scenario cannot be determined without the speculation prohibited by Spaeth. See Spaeth, 801 P.2d at 593.
Marsh also relies on Devine v. Wonderlich (Iowa 1978), 268 N.W.2d 620, in which the Iowa Supreme Court concluded that ballots containing only the candidate’s surname sufficiently conveyed the voters’ intent. The court stated:
In view of Devine’s active candidacy, the publicity and advertising which accompanied it, and the unlikelihood of his being confused with the few other persons having the same surname, none of whom were shown to be politically active, the use of his surname alone was sufficient to indicate a vote for him.
Devine, 268 N.W.2d at 627 (emphasis added). While the Devine court found it unlikely that votes cast for “Devine” were intended for any of the other ten Devines residing in the county, we cannot properly make such an assumption under the facts of this case. Here, while the record does not reflect that Gilbert, David and Lloyd Marsh were politically active and it is clear that none of them filed a declaration of intent, they each received write-in votes. Under such *28 circumstances, we cannot state without speculation or conjecture that the “Marsh” ballots were intended for Gaylen Marsh and not Gilbert, David or Lloyd.
We hold that the District Court did not err in concluding that the surname “Marsh” alone on a write-in ballot was insufficient to determine the intent of the voters under § 13-15-202, MCA.
Issue 2
Did the District Court err in concluding that the Recount Board had jurisdiction to disallow votes cast with only the surname “Marsh”?
Marsh argues that election judges are vested with sole responsibility for rejecting invalid or irregular ballots and that a recount board is limited to simply “recounting” those ballots that the election judges have determined to be valid. On this basis, Marsh insists that the Recount Board exceeded its jurisdiction by redetermining which ballots to count and which ballots to void and that the District Court erred in concluding otherwise. Overland contends that Marsh’s approach fails to consider other relevant statutes and fails to look at the statutes as a whole.
Statutes do not exist in a vacuum. They must be read in relationship to one another to effectuate the intent of the statutes as a whole. See Swan Corp. v. Mont. Dep’t of Revenue (1988), 232 Mont. 210, 214, 755 P.2d 1388, 1390; (citing State v. Meader (1979), 184 Mont. 32, 36-37, 601 P.2d 386, 388-89). In Howell v. State (1994), 263 Mont. 275, 868 P.2d 568, we stated that “it is our duty to interpret individual sections of an act in such a manner as to ensure coordination with the other sections of the act.” Howell, 868 P.2d at 574 (citation omitted).
Section 13-15-202, MCA, generally provides that the election judges shall count the votes cast for each candidate. As discussed above, § 13-15-202(3), MCA, allows the election judges to count only those ballots which clearly convey the voters’ intent. Implicit in the term “count” is that only those ballots which satisfy the statutory intent requirement may be counted.
Sections 13-16-101 through 13-16-507, MCA, set forth the procedures for the appointment of a recount board and for recounts of various types. Section 13-16-412, MCA, authorizes a recount board to count votes cast for the candidates involved in the recount, while § 13-16-415, MCA, requires a recount board to verify the results:
*29 After a recount is completed, tally sheets shall be compared and the correctness of all reports of votes cast ascertained. The totals for each candidate or on each issue shall be compiled and checked for accuracy. [Emphasis added.]
When Overland petitioned for a recount, the Recount Board was required by § 13-16-412, MCA, to count the votes cast for the candidates for sheriff. It was further required, under § 13-16-415, MCA, to ascertain the correctness of all reports of votes cast. Reading these statutes together, we conclude that the Recount Board could fulfill its statutory duties only by determining whether or not certain votes could be counted pursuant to the strictures contained in § 13-15-202, MCA.
We hold that the District Court did not err in concluding that the Recount Board had jurisdiction to disallow votes cast with only the surname “Marsh.”
Issue 3
Did the election judges’ failure to properly identify rejected ballots compromise the validity of the entire election?
Marsh argues that the election judges failed to mark the ballots they rejected as required by § 13-15-203, MCA. He claims that this failure to properly mark the rejected ballots compromised the validity of the entire election process.
Marsh did not name the election judges as party defendants in this action; nor did he raise this issue in bis complaint. He also did not present this argument during the hearing and did not move to amend his pleadings to conform to any evidence presented, as authorized by Rule 15(b), M.R.Civ.P. Marsh raised this issue for the first time in his post-hearing memorandum, and the District Court did not address the issue in its findings and conclusions.
We will not address issues which were not properly raised before the district court. Lane v. Smith (1992), 255 Mont. 218, 221, 841 P.2d 1143, 1145. We conclude that Marsh failed to timely raise the issue of the election judges’ failure to mark rejected ballots as required by § 13-15-203, MCA, before the District Court and, therefore, we decline to address it.
Issue 4
Did the District Court abuse its discretion in awarding attorney’s fees to Overland?
*30 In Montana, litigants generally are not entitled to an award of attorney’s fees absent a specific contractual or statutory provision. Howell, 868 P.2d at 574. Section 13-36-205, MCA, authorizes an award of attorney’s fees to the prevailing party in a contested election proceeding:
In any contest, the prevailing party may recover his costs, disbursements, and reasonable attorney’s fees. Costs, disbursements, and attorney’s fees in all such cases shall be in the discretion of the court.
Because a fee award under § 13-36-205, MCA, is discretionary, we review the District Court’s award of attorney’s fees to Overland for abuse of discretion. Gandy v. Eschler (1993), 261 Mont. 355, 361, 862 P.2d 1116, 1120.
Marsh asserts that either he or Overland probably would have initiated the election contest proceeding after the recount, regardless of the results of the recount. He further contends that the inevitable legal action would have resulted from the acts of the election judges or Recount Board rather than from any fault of either himself or Overland. Under these circumstances, he argues that the District Court abused its discretion in awarding attorney’s fees to Overland rather than leaving each party responsible for the attorney’s fees he incurred.
Overland is the prevailing party in an election contest proceeding. Section 13-36-205, MCA, authorizes an award of attorney’s fees in such a situation and the District Court acted pursuant to the statute in making the award. The court, in its discretion, could have accepted Marsh’s arguments; it did not choose to do so. We conclude that the District Court did not abuse its discretion in awarding attorney’s fees to Overland.
Overland points out that he has incurred additional costs and attorney’s fees in defending against Marsh’s appeal and requests that we award him fees and costs on appeal. Overland’s attorney’s fees on appeal were incurred during his ongoing defense against Marsh’s election contest. Under the facts and circumstances of this case, awarding attorney’s fees on appeal furthers the purpose of § 13-36-205, MCA, and is consistent with the discretionary award by the District Court. See Bozeman Daily Chronicle v. City of Bozeman (1993), 260 Mont. 218, 232, 859 P.2d 435, 444. Therefore, we conclude that Overland is entitled to an award of costs and reasonable attorney’s fees for this appeal.
*31 Affirmed and remanded for determination of the amount of attorney’s fees and costs to be awarded.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON and HUNT concur.