NO. 95-570

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

DEBRA K. WALKER,

      Petitioner and Appellant,

  v.

RICHARD A. HIGGINS,

      Respondent and Respondent.

FILED

JUL 30 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twenty-first Judicial District,
        In and for the County of Ravalli,
        The Honorable Jeffrey Langton, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Clinton H. Kammerer; Kammerer Law Offices,
        Missoula. Montana

    For Respondent:

        Milton Datsopoulos,, Paul T. Ryan; Datsopoulos,
        MacDonald & Lind, Missoula, Montana

        Charles H. Recht; Recht & Recht, Hamilton,
        Montana

Submitted on Briefs: June 20, 1996

Decided: July 30, 1996

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Debra K. Walker appeals a summary judgment in favor of Richard A. Higgins in this action to invalidate the official result of the November 1993 mayoral election in Darby, Montana. As part of its judgment, the Twenty-first Judicial District Court, Ravalli County, awarded Higgins $13,034.05 in attorney fees. We affirm.

The issues are whether summary judgment was proper and whether the award of attorney fees was an abuse of discretion.

Darby is an incorporated town in Ravalli County, Montana, with an elected mayor. In November of 1993, an election was held for the office of mayor of Darby by mail-in ballot, pursuant to Title 13, Chapter 19, MCA. Jerry Moore and acting mayor Richard A. Higgins were the candidates for this office. Ballots were mailed to all registered electors of Darby, and 269 completed ballots were returned and counted. Higgins received 135 votes, Moore received 134 votes, and Higgins was declared the winner.

In May of 1994, Debra K. Walker, a registered voter of the Town of Darby, filed this action to invalidate the election. Walker averred that individuals who were not residents of the Town of Darby had cast their ballots and voted in the election when they had no right to do so, based on her examination of the election results and voter registration.

Walker challenged the qualifications of five individual voters. Relying upon affidavits filed with the court, Higgins moved for summary judgment. Walker filed a cross-motion for summary judgment, supported by depositions and exhibits.

After a hearing, the District Court ruled that Walker had failed to produce material and substantial evidence to support her allegations that the five voters were unqualified to vote. The court granted summary judgment to Higgins and awarded him attorney fees pursuant to § 13-36-205, MCA.

ISSUE 1

Was summary judgment proper?

This Court's standard of review of a summary judgment is the same as that used by a district court--whether, pursuant to Rule 56(c), M.R.Civ.P., material issues of fact exist and whether the moving party is entitled to judgment as a matter of law. Motarie v. N. Mont. Joint Refuse Disposal (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. The moving party has the burden of establishing that no genuine issue of fact is before the trial court; once that burden is met, the party opposing the motion must present evidence of a **material** and substantial nature raising a genuine issue of fact. Motarie, 907 P.2d at 156.

The procedures for contesting the results of a public election are set forth at Title 13, Chapter 36, MCA. The possible grounds for such a challenge are enumerated at § 13-36-101, MCA. The ground raised here, illegal votes, is subsection (3) thereof.

Section 13-36-211, MCA, provides that an election is not to be set aside on account of illegal votes unless the candidate whose right is contested had knowledge of or connived at the illegal votes (which is not alleged here), or

> the number of illegal votes given to the person whose
> right to the nomination or office is contested, if taken

3

from him, would reduce the number of his legal votes below the number of votes given to some other person for the same nomination or office, after deducting therefrom the illegal votes which may be shown to have been given to such other person.

Section 13-36-211(2), MCA.

In this case, Walker claims that illegal votes were cast by five voters who were not residents of the Town of Darby at the time of the election. Residency is defined at § 1-1-215, MCA:

Residence -- rules for determining. Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
     (1)  It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.
     (2)  There can only be one residence.
     (3) A residence cannot be lost until another is gained.
     (4)  The residence of his parents or, if one of them is deceased or they do not share the same residence, the residence of the parent having legal custody or, if neither parent has legal custody, the residence of the parent with whom he customarily resides is the residence of the unmarried minor child. In case of a controversy, the district court may declare which parental residence is the residence of an unmarried minor child.
     (5) The residence of an unmarried minor who has a parent living cannot be changed by either his own act or that of his guardian.
     (6)  The residence can be changed only by the union of act and intent.

As to the five voters challenged in this case, Higgins established that they were each registered to vote in the Town of Darby and that their names appeared on the precinct voting register. The registration of an elector and appearance of that person's name on the precinct register is prima facie evidence of that person's right to vote. Section 13-z-601, MCA. We conclude that Higgins met his initial burden of proof in support of his motion for summary judgment.

4

**The first two challenged voters were Daniel and** Shawna Rall. Walker submitted a copy of a juror questionnaire executed by Shawna Rall in March 1994, in which Shawna Rall stated she should be excused from jury duty in the city court because she did not live within the city limits of Darby. Daniel Rall similarly executed a city court juror questionnaire in July 1994 in which he stated he no longer had a home in Darby and should be excused from jury duty.

In individual affidavits to the District Court, the Ralls both stated that prior to August 1993 they lived and resided within the Town of Darby. They further stated that in August 1993 their home was damaged by fire and became uninhabitable, forcing them to seek temporary housing outside the Town of Darby. They each further stated by affidavit that at the time of the November 1993 election they intended the Town of Darby to remain their legal residence and that they never registered or attempted to vote in any other state or district other than the Town of Darby.

As the District Court noted, neither of the Ralls' juror questionnaires is probative of their situation or intent at the time of the November 1993 election--the questionnaires were executed months later. The only evidence of the Ralls' intent at the time of the election is contained in their affidavits. We conclude that as to the Ralls' right to vote in the November 1993 Darby mayoral election, Walker has failed to meet her burden of presenting evidence of a material and substantial nature raising a genuine issue of fact.

Another challenged voter was Cheryl E. Snider. Snider testified by affidavit that beginning in March of 1992 she lived in a home which she believed to be within the Town of Darby and which was surrounded by property which she knew to be in the town limits. Her landlord, however, testified by deposition that he was unsure whether he paid city taxes on the property Snider rented from him, but did not believe so. Also, Snider executed a juror questionnaire in March of 1994 in which she gave contradictory answers as to her residence. She answered "no" to whether she should be disqualified as a juror for living outside the city limits of Darby, but she also answered "no" to whether her home was within the city limits of Darby.

The statement of Snider's landlord is at best speculative, and therefore not sufficient to preclude summary judgment. Farm Credit Bank of Spokane v. Hill (1993), 266 Mont. 258, 264, 879 P.2d 1158, 1161. Moreover, Snider's ambiguous responses to the juror questionnaire were tempered by her affirmation in that document that she met all of the qualifications of residency and had no reason to be excused from jury duty. Therefore, we conclude that Walker did not meet her burden of proof in resisting the summary judgment motion as to Snider.

Paula Nelson was another challenged voter. Walker questioned whether Nelson's residence was within the Town of Darby. Nelson submitted an affidavit that in the past five years she had never registered or attempted to vote elsewhere but in the Town of Darby and that she believed that the house in which she lived in 1993 was

6

within the Town of Darby because it received town water and sewer services.  Walker did not submit any evidence to support her contention that Nelson's residence was outside the town limits. We conclude she did not meet her burden of establishing a **material** issue of fact as to Nelson's qualification to vote.

The final voter challenged was Robert H. Rawlins.  Walker submitted the deposition **of Gary Steinman,** who operated a hotel in Darby.  Steinman testified that his hotel records had been destroyed but that Rawlins was a hotel tenant or guest off and on throughout 1993, staying as long as months **at a time.**  Steinman testified that Rawlins left for Las Vegas, Nevada, in October or November of 1993, but returned around November of 1994 and offered to rent his old hotel **room** back for four months.

As the District Court stated, nothing in Steinman's deposition contradicts the prima facie evidence of Rawlins' right to vote as a resident of Darby in the November 1993 election.  We conclude that Walker has not met her burden of establishing a material issue of fact as to Rawlins' right to vote in the 1993 Darby mayoral election.

After reviewing the evidence before the District Court, we hold that the court was correct in ruling that Walker failed to produce **material** and substantial evidence that illegal votes were cast.  Because no illegal votes have been demonstrated, we need not proceed to the question of whether Higgins would have sufficient votes **to** win the **election if** the **illegal** votes were taken from him. We hold that summary judgment for Higgins was proper.

7

ISSUE 2

Was the award of attorney fees an abuse of discretion?

Section 13-36-205, MCA, provides:

Recovery of costs. In any contest, the prevailing party may recover his costs, disbursements, and reasonable attorney's fees. costs, disbursements, and attorney's fees in all such cases shall be in the discretion of the court. In case judgment is rendered against the petitioner, it shall also be rendered against the sureties on the bond.

Because the statute places the award of attorney fees within the trial court's discretion, our standard of review is whether the District Court abused that discretion.

The District Court awarded Higgins attorney fees of $11,608.55 for representation by the firm of Datsopoulos, MacDonald & Lind, P.C., and $1,425.50 for representation by the firm of Recht & Recht, P.C. Walker contends that the court abused its discretion in awarding attorney fees to attorney Charles H. Recht of Recht & Recht, P.C., because she maintains Recht appeared on behalf of the Town of Darby. At the time of this action, Recht served as the town attorney for Darby.

The record is somewhat ambiguous as to whom Recht represented in this action. His billing records, attached to his affidavit of attorney fees, list the "Town of Darby" as his "client." The Clerk of District Court's Register of Action lists Recht as the attorney for the "City of Darby." However, the Town of Darby was not a party to this action. Recht signed pleadings as "Attorney for Richard A. Higgins." He testified at the attorney fee hearing that he appeared as co-counsel for Higgins, and not on behalf of the

8

Town of Darby. Recht explained his billing records showing the Town of Darby as his client as follows:

> The Town of Darby has paid the fees for Mr. Higgins because of the position of Mr. Higgins with respect to the Town of Darby. So just like any other person, if you were awarded your attorney fees, if they were paid by your client, you would return them to your client. I was returning them to the Town of Darby, who paid **my** fees.

Recht's testimony suggests that his employment **as the attorney for** the Town of Darby was on an hourly basis rather than **on retainer or** salary.

Walker also claims there was no expert testimony on Recht's behalf, which, without citation to authority, she maintains was required. Finally, Walker argues that her position in this action was reasonably grounded in fact and supported by documentation from objective persons, and that therefore the award of attorney fees against her was an abuse of discretion.

In determining what constitutes reasonable attorney fees, factors to be considered are: (1) the amount and character of the services rendered; (2) the labor, **time,** and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property affected; (5) the professional skill and experience called for; (6) the attorney's character and standing in the profession; and (7) the result secured by the services of the attorney. Swenson v. Janke (1995), 274 Mont. 354, 361, 908 P.2d 678, 682-83.

At the hearing on the **matter** of attorney fees, Datsopoulos testified that when Higgins asked him to serve as co-counsel with Recht on this case, his response was "I knew Bud Recht, I respected

him, and I would be pleased to work with him." Datsopoulos also testified that Recht took an active part in the case, which Datsopoulos described as a complex case of first impression and "a puzzling and interesting case." Recht testified that he had been an attorney for thirty years, that he felt his own fees for this case were reasonable, and that there was a lot of interest and pressure in this case. As to the character and importance of this litigation, the District Court reasoned as follows:

> If it's true, as I have heard today, that the mayor of the Town of Darby is paid $50 a month, $600 a year, and if the general rule applied that the Court should generally consider that each side should bear their legal fees, then any time someone didn't like [someone] who is elected mayor or [to] any other public office, then all they need to do is raise the specter of a suit to invalidate the election where each side would have to bear their legal fees. And at least those who are willing to bear the risk, or have the financial where-withal that legal fees is not a consideration, could effectively annul the decision of the public to elect who they want to elect to public office.

> . . .

> I think this is the type of an action where whoever chooses to file it should be extremely careful that before it's filed that they not only have a reasonable cause or non-frivolous case, but a winning case, because the odds are, if they lose, they're going to pay.

> And, on the other hand, if we have an official in office who has good cause to believe he may be wrongfully in that office, if the election was tainted in some fashion, then he better seriously consider his position before he enlists assistance, because if he loses, he's going to pay.

There is no question about who was the prevailing party in this case.

The testimony before and considerations engaged in by the District Court reflect the factors set forth in <u>Swenson</u> for

10

determining the issue of whether attorney fees should be awarded We hold that sufficient evidence was presented to the court on the issue of attorney fees and that the court did not abuse its discretion in its award of attorney fees to Higgins.

We affirm the decision of the District Court

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11