No. 99-692

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 280

THERON PETER PAULSEN,

Plaintiff and Appellant,

v.

GLENN A. HUESTIS,

Respondent.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Blaine,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James C. Hunt, Hunt & Molloy, Helena, Montana

For Respondent:

Daniel A. Boucher, Altman & Boucher, Havre, Montana

Submitted on Briefs: June 15, 2000
Decided: November 14, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Montana's Eighteenth Judicial District Court, Blaine County, dismissed this action based upon a finding that election procedures during the 1998 general election for the office of Sheriff of Blaine County complied with Montana state law. The District Court also awarded attorney's fees and costs to Glenn A. Huestis, who was declared the successful candidate for Sheriff of Blaine County. Theron Peter Paulsen appeals. We affirm the District Court's rulings.

¶2 Paulsen frames the issues on appeal as follows:

¶3 1. Whether the District Court erred in dismissing Paulsen's challenge to the results of the Blaine County Sheriff's race in the 1998 general election.

¶4 2. Whether the District Court erred in awarding Huestis his attorney's fees and costs.

¶5 Incumbent Sheriff Paulsen and challenger Huestis contested the Democratic nomination for Sheriff of Blaine County, Montana, in the 1998 primary election; no Republican sought the office. Huestis prevailed. Paulsen then ran in the general election as a write-in candidate. The record indicates he conducted a vigorous campaign, and was the only candidate to file a Declaration of Intent For Write-In Candidates (hereinafter Declaration of Intent) to challenge Huestis in the general election.

¶6 On election day, Blaine County election officials posted the statutorily-prescribed voter instructions. Nearly half of the voters complied with Montana's election law governing write-in candidates and wrote in one of the thirty legally acceptable name derivations of candidate Paulsen as properly submitted by him on his Declaration of Intent. However, 37 voters only wrote in the surname "Paulson" or "Paulsen," or the name "Pat Paulsen" or "Pat Paulson." The record indicates that after a recount, the final vote tally was 1,219 for Huestis and 1,200 for Paulsen.

¶7 These 37 ballots, invalidated by Blaine County election officials as not complying with the statutory requirements for write-in candidates, were sufficient to cause Paulsen to lose the election. Nine other ballots were invalidated for reasons unknown. After the recount Paulsen's margin of loss had widened slightly. He filed a complaint in January 1999,

contesting the invalidation of the 37 ballots and asking that he be declared the victor, or in the alternative, that a new election be held, and that he be awarded legal fees and expenses, and any other relief the court might grant. The District Court found that the treatment of the ballots in question was correct under the law, and that fees and expenses should be awarded to Huestis. Paulsen appeals.

## Issue 1

¶8 *Whether the District Court erred in rejecting Paulsen's challenge to the results of the Blaine County Sheriff's race in the 1998 general election.*

¶9 This Court views its role in maintaining the sanctity and integrity of the electoral process for the people of Montana as one of its greatest areas of responsibility. Montana's laws governing the electoral process are, for the most part, clear. However, in some instances their application, as this case demonstrates, can result in seemingly harsh consequences, potentially even undermining the will of the majority of voters. Amending the election statutes is a task for the legislature; this Court's task is simply to ascertain what is in terms or in substance contained in these statutes, neither inserting what has been omitted nor omitting what has been inserted. Section 1-2-101, MCA. That said, the legislature may wish to re-examine the election statutes pertaining to write-in votes with a view to amending these laws so as to obviate the sort of problems appearing in this case and in *Marsh v. Overland* (1995), 274 Mont. 21, 905 P.2d 1088. Against this backdrop, we discuss the issues on appeal.

¶10 The proper grounds for contesting a nomination or election in Montana are set forth in §13-36-101, MCA:

Grounds for contest of nomination or election to public office. An elector may contest the right of any person to any nomination or election to public office for which the elector has the right to vote, for any of the following causes: (1) on the ground of a deliberate, serious, and material violation of any provision of the law relating to nominations or elections; (2) whenever the person whose right is contested was not, at the time of the election, eligible to such office; (3) on account of illegal votes or an erroneous or fraudulent count or canvass of votes.

Section 13-36-101, MCA. While Paulsen does not cite this statute, we will attempt to frame his arguments within its context.

¶11 Paulsen first argues that the 37 votes in question were unquestionably cast for Theron Peter Paulsen and should thus be counted in the election results. This approach is generally consistent with an argument under § 13-36-101(3), MCA, that there was an erroneous canvassing of votes. Paulsen never does allege fraud. Paulsen argues as well, without compelling statutory or case law in support, that the instructions to voters posted at polling places were inadequate. He also asserts in his brief to this Court that the rejection of these votes, which was determinative of the election outcome, violated his due process rights under both the U.S. and Montana Constitutions. We will dispose of this last argument first.

¶12 While Paulsen did, indeed, assert his due process claim in his initial complaint, the question still arises as to whether or not this argument was properly raised in the trial court. If it was not, Paulsen is precluded from raising the issue on appeal. *Marsh*, 274 Mont. at 29, 905 P.2d at 1093. A careful review of the trial court transcript reveals that it was only upon prompting by the court to establish a clear record on appeal that Paulsen made the briefest mention of due process rights. That reference, moreover, was not to his own due process rights--the argument he advances before this Court--but to the rights of the voters, none of whom are parties to these proceedings. Paulsen again refers to the due process rights of voters in his brief. While Paulsen may have been a voter in the election being contested, he brings this action as a candidate. We conclude that Paulsen has failed to properly raise in the District Court the due process argument he now makes on appeal. Accordingly, we will not consider this issue further.

¶13 We review a district court's conclusions of law to determine if they are correct. *Marsh*, 274 Mont. at 25, 905 P.2d at 1090. With regard to Paulsen's first argument--i.e. that there was an erroneous canvassing of votes--we conclude that the relevant statutes were complied with as written, and we uphold the ruling of the District Court as correct under the law.

¶14 Montana's statutes governing write-in candidacies for elective office, §§ 13-10-211, 13-13-117(4) and 13-15-202(3), MCA, must be read collectively. We interpreted these statutes in *Marsh* and follow the approach of that case here.

¶15 *Marsh* was a case of first impression. Our decision invoked the application of case law and Montana election statutes and involved the question of voter intent in the context of a write-in election for the sheriff of Sheridan County. The disallowance of 40 ballots by

Sheridan County election officials--upheld by the District Court--was sufficient to cause Marsh to lose the election.

¶16 In *Marsh*, four ballots were cast with different first names, but the same surname as the Appellant; 12 ballots listed only the last name "Marsh." Additionally, 22 persons wrote the correct name, but neglected to place an "X" in front of the name as required by § 13-13-117(4), MCA. We determined that these ballots did not comport with Montana's election laws requiring certainty of voter intent--§ 13-15-202(3), MCA--and we affirmed the ruling of the District Court to that effect. *Marsh*, 274 Mont. at 28, 905 P.2d at 1092. We also upheld the award of attorney's fees to the prevailing party.

¶17 In the case *sub judice*, a total of 37 ballots are at issue, principally ballots with only the last name "Paulsen" or "Paulson." The disallowance of these ballots also caused Paulsen to lose the election. In *Marsh* we concluded that both statutory and case law required that ballots be disallowed unless the intent of electors could be established with reasonable certainty from the ballot.

¶18 *Marsh* was grounded in our prior case law wherein we have consistently ruled that ballots that do not clearly express the intent of the voter will be disallowed. *See Rennie v. Nistler* (1987), 226 Mont. 412, 735 P.2d 1124; *Peterson v. Billings* (1939), 109 Mont. 390, 96 P.2d 922. Our rationale for rejecting ballots where the voters' intent is not clear was set forth in *Spaeth v. Kendall* (1990), 245 Mont. 352, 354-55, 801 P.2d 591, 593. In that case we stated, "The paramount and ultimate object of all election laws under our system of government is to obtain an honest and fair expression from the voters upon all questions submitted to them. When such expression cannot be gleaned without speculation, however, the vote is to be voided, to insure a standard of objectivity in our election process." *Spaeth,* 245 Mont. 352, 354-55, 801 P.2d 591, 593.

¶19 Election judges must be able to discern voter intent strictly from the ballot, and § 13-15-202(3), MCA, sets out the black-letter law as to how election officials are to accomplish that task. This statute provides:

> A ballot or part of a ballot is void and may not be counted if the elector's choice cannot be determined. If part of a ballot is sufficiently plain to determine the elector's intention, the election judges shall count that part. Except as provided in 13-10-211(4)[(1)], *a write-in vote may be counted only if the write-in vote identifies an individual by any of the designations filed pursuant to 13-10-211(1)(a)*. [Emphasis

added.]

¶20 Section 13-15-202(3), MCA, makes clear the requirement that the name on a write-in ballot must conform to one of the names submitted by a write-in candidate in his declaration of intent to be a write-in candidate. In pertinent part this statute--§ 13-10-211 (1)(a)-- requires that the declaration of intent for write-in candidates, among other requirements, must contain:

(i) the candidate's first and last names;

(ii) the candidate's initials, if any, used instead of a first name, or first and middle name, and the candidate's last name;

(iii) the candidate's nickname, if any, used instead of a first name, and the candidate's last name; and

(iv) a derivative or diminutive name, if any, used instead of a first name, and the candidate's last name.

¶21 The record shows the 37 rejected ballots at issue here did not comply with this statutory requirement, as they did not contain a name consistent with one of the 30 names submitted by Paulsen in his declaration of intent. Moreover, write-in votes using only the candidate's last name, do not identify the person being voted for by "any of the designations filed pursuant to 13-10-211(1)(a)" as is required under § 13-15-202(3), MCA. The various subsections of § 13-10-211(1)(a), MCA, unambiguously require that the write-in candidate's last name also must be accompanied by, alternatively, the candidate's first name, initials, first and middle name, nickname or a derivative or diminutive name. *See, also, Marsh*, 274 Mont. at 28, 905 P.2d at 1092.

¶22 Furthermore, while facially appealing, Paulsen's argument that, since no other person named "Paulsen" or "Paulson" filed a declaration of intent[2] and that, therefore, all written-in votes with those names should have been counted for Theron Peter Paulsen, is not persuasive. The election laws referred to above clearly specify what names voters may write-in where the candidate being voted for has filed a declaration of intent. Statutorily, if one of those names is not used, then the vote may not be counted by the election judges. Section 13-15-202(3), MCA. Again, if this statutory framework is too harsh and, arguably, subverts the exercise of the elector's franchise, then it is up to the legislature, not this

Court, to change the law.

¶23 With regard to the other statutory bases for contesting an election, Paulsen does not allege that Huestis was ineligible as a candidate under § 13-36-101(2), MCA. With regard to § 13-36-101(1), MCA, Paulsen devotes some time to discussing the content of voter instructions. However, he does not allege that the instructions actually given to Blaine County voters did not comply with § 13-13-112, MCA and § 13-12-209, MCA, even though he would have preferred the posted instructions to affirmatively set forth the proper names for his write-in candidacy. Section 13-13-112, MCA, does not require such an act, but, rather, states in pertinent part:

Display of instructions for electors. (1) Instructions for electors on how to prepare their ballots or use machines or devices must be posted in each compartment provided for the preparation of ballots and elsewhere in the polling place.

(2) The instructions must be in easily read type, 18 point or larger, and explain how to:

(a) obtain ballots for voting;

(b) prepare ballots for deposit in the ballot box; and

(c) obtain a new ballot in place of one spoiled by accident.

¶24 Similarly, as to the instructions to be placed on the ballots themselves, § 13-12-209, MCA, provides, in pertinent part:

Paper ballots-stub size-content. (1) Paper ballots shall be printed on the same sheet with a stub, separated by perforation.

(2) The stub shall extend the entire width of the ballot and have instructions printed on it.

(3) Upon the stub shall be printed the following:

This ballot should be marked with an "x" in the square before the name of each individual or candidate for whom the elector intends to vote. The elector may write

in or affix a preprinted label in the blank spaces or over any other name, the name of an individual for whom he wishes to vote and vote by marking an "x" in the square before the name.

¶25 The record shows the statutory instructions given complied with § 13-13-112, MCA, and with § 13-12-209, MCA. Moreover, the record reflects that, in addition, the election administrators furnished each precinct a list of the proper names submitted by Paulsen, and that these proper names were available to any voter who might have further inquired of polling place election officials. In fact, three persons did inquire and were shown the list during absentee voting.

¶26 The county election officials testified that, in their view, an actual posting of Paulsen's list of names would have violated Montana law regarding electioneering within a prohibited distance of polling places under § 13-35-211, MCA. We do not reach that question here, but it is, nevertheless, apparent that the record, as a whole, demonstrates that the election officials were familiar with the statutes governing the election and were attempting to follow those to the letter. Once again, if Paulsen believes that the laws should be changed, then his argument should be made to the legislature, not this Court.

¶27 Even though there is a strong tradition in Montana's jurisprudence to effectuate the "honest choice of the electors," *Dickerman v. Gelsthorpe* (1897), 19 Mont. 249, 47 Pac. 999, 1001, the electors' marking must not be expressly forbidden by statute, and must be in substantial compliance with the law. *Peterson v. Billings* (1939), 109 Mont. 390, 96 P.2d 922. Here, the 37 rejected ballots did not substantially comply with the law governing write-in candidates, and it was, therefore, correct for the election judges to disallow these ballots and for the District Court to uphold the election officials' decision.

¶28 Finally, it bears noting that Paulsen was not blind-sided by the statutory requirements pertaining to his write-in candidacy. The record shows that he had considerable advance notice of the proper form of names required for write-in votes. In fact, Paulsen was sufficiently concerned about this matter that he contacted the local election administrator months before the election to inquire about proper form. He also pre-printed and distributed labels with a lawful form of his name so that voters could stick them on the ballot on election day. It appears from representative ballots in the record that some voters used these pre-printed stickers.

¶29 Additionally, the county election administrator forwarded Paulsen's concerns about

the proper form of names to the Montana Secretary of State, who accurately cited the relevant statutes in correspondence to Paulsen's campaign staff as early as August 20, 1998. The Secretary of State called specific attention to the requirement that write-in votes in declared candidacies must match one of the names furnished by the candidate. Again, Paulsen submitted 30 names, all of which had the requisite first name or a derivative or diminutive, along with Paulsen's last name with multiple spellings.

¶30 Furthermore, Paulsen acknowledged in testimony before the District Court that an informed person alerted his campaign days before the election that county election officials were advising absentee voters that a write-in vote for Paulsen must have two names to be counted. Paulsen's argument that he did not add his first name to his widely-distributed signs because it was too difficult is hardly compelling. The record is clear that Paulsen deployed numerous forms of campaign advertising, including newspapers and electronic media, but apparently used none of that to alert potential voters to the basic requirement that two names must be used on ballots, even when he knew it was necessary. Paulsen was sufficiently concerned to inquire about the form each vote must take, and yet apparently ignored and failed to effectively disseminate to the electorate the fruits of his inquiry.

¶31 In conclusion, we agree that the 37 ballots at issue were properly rejected by the election judges as failing to comply with the controlling statutes and we affirm the District Court's decision to that effect.

Issue 2

¶32 *Whether the District Court erred in awarding Huestis his attorney's fees and costs.*

¶33 Section 13-36-205, MCA, provides:

> Recovery of costs. In any contest, the prevailing party may recover his costs, disbursements, and reasonable attorney's fees. Costs, disbursements, and attorney's fees in all such cases shall be in the discretion of the court. In case judgment is rendered against the petitioner, it shall also be rendered against the sureties on the bond.

¶34 Paulsen argues that attorney's fees are not warranted, and in the alternative, with no supporting authority, that § 13-36-204, MCA, which sets the requirements for posting

bond in election contests, should establish a ceiling of $2,000 for the award of attorney's fees. Paulsen's argument is unpersuasive. The legislature has not imposed any arbitrary limits on the prevailing party's recovery of costs, disbursements and attorney's fees in an election contest, but, rather, has left that decision to the sound discretion of the trial court. Once again, if Paulsen wants the law changed, then his argument is with the legislative branch of government, not the judicial branch.

¶35 Because § 13-36-205, MCA, places the award of attorney's fees within the trial court's discretion, our standard of review is whether the court abused its discretion. *Swenson v. Janke* (1995), 274 Mont. 354, 360, 908 P.2d 678, 682. Moreover, as Paulsen is also attempting, in the alternative, to reduce the award of fees, he is essentially questioning the reasonableness of the fees awarded.

¶36 In determining the reasonableness of attorney's fees, the following factors are to be considered: (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property affected; (5) the professional skill and experience called for; (6) the attorney's character and standing in the profession; and (7) the result secured by the services of the attorney. *Swenson v. Janke* (1995), 274 Mont. 354, 361, 908 P.2d 678, 682-83.

¶37 We have previously held in an election contest for mayor where a total of 269 votes were cast that attorney's fees totaling $13,034.05 were reasonable. *Walker v. Higgins* (1996), 277 Mont. 443, 922 P.2d 1154. Here, in awarding attorney's fees totaling $4,582.14, the District Court reviewed the evidence presented and ruled consistently with the factors set forth above. We conclude that the District Court did not abuse its discretion. We affirm the court's award of attorney's fees to Huestis as the prevailing party in Paulsen's election contest.

¶38 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ KARLA M. GRAY

1. This subsection is inapplicable because Paulsen filed a declaration of intent.

2. In rejecting this argument, we do note that § 13-15-202(1)(b), MCA, provides, in pertinent part, that "[t]he judges may not count or record write-in votes for candidates who have not filed a declaration of intent as provided in 13-10-211, except for write-in votes cast: (i) for an office for which a candidate has not filed a declaration or petition for nomination or declaration of intent." Since Paulsen did file a declaration of intent, the effect of this statute would have prohibited the election judges from counting any write-in votes other than for Paulsen.