No. 96-405

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

---

HERN FARMS, INC., a Montana Corporation,

Plaintiff and Appellant,

v.

THE MUTUAL BENEFIT LIFE INSURANCE
COMPANY, a New Jersey Corporation,

Defendant and Respondent.

FILED

DEC 31 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

CERTIFIED QUESTION FROM: United States Court of Appeals
for the Ninth Circuit

COUNSEL OF RECORD:

For Appellant:

Thomas M. Welsch; Poore, Roth & Robinson, Butte,
Montana

Urban L. Roth, Attorney at Law, Polson, Montana

For Respondent:

Dirk A. Williams; Church, Harris, Johnson &
Williams, Missoula, Montana

Robert J. Phillips; Phillips & Boyer, Missoula,
Montana

Submitted on Briefs: December 12, 1996

Decided: December 31, 1996

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The United States Court of Appeals for the Ninth Circuit, has certified to this Court the following two questions:

1. Under § 25-13-902(2), MCA (no longer effective after June 30, 1996), is a seller of foreclosed agricultural land required to offer the land to the immediately preceding owner under the same terms and conditions contained in a third party offer the seller finds acceptable?

2. Under § 25-13-902(2), MCA (no longer effective after June 30, 1996), is a seller of foreclosed agricultural land required to offer the land to the immediately preceding owner for cash equal to the present value of a third party offer the seller finds acceptable?

We answer the first question in the negative; as to the second, the seller can either sell to the preceding owner on the same terms and conditions as the time/price offer or it can offer to sell for the time/price offer discounted to present value.

For purposes of submitting the two certified questions to this Court, the following facts are taken from the Ninth Circuit's Certification Order dated June 20, 1996:

> In 1985, Hern Farms, Inc. mortgaged a farm to the Mutual Benefit Life Insurance Company to secure payment of a $1.8 million promissory note. Hern Farms defaulted on the note. Mutual Benefit instituted foreclosure proceedings in the District Court for the Twentieth Judicial District for the State of Montana. Judgment was entered in favor of Mutual Benefit in April 1988, a sheriff's sale was held, and Mutual Benefit purchased the property. In the summer of 1990, Mutual Benefit agreed to sell the farm to Lake Seed Company for $1.1 million

over 25 years, and to finance $900,000 of the purchase price at 9.5% per annum, with an adjustment to the market interest rate on August 1, 2000. The present value of Lake Seed's offer was less than the offer's face value of $1.1 million.

By the terms of Mont. Code Ann. § 25-13-902, when Mutual Benefit determined Lake Seed's offer was acceptable, it was required to make a "good faith offer" to sell the land to Hern Farms for "the same price" Lake Seed had offered. On July 2, 1990, Mutual Benefit sent a letter notifying Hern Farms that a sale was planned and that Hern Farms could exercise its right of first refusal by paying Mutual Benefit $1.1 million cash within 60 days. Hern Farms asserted it had the statutory right to purchase the property under the same terms and conditions offered to Lake Seed, and asked Mutual Benefit to reveal the terms of the proposed sale. Mutual Benefit refused. Hern Farms then sued in the District Court for the Second Judicial District of the State of Montana, alleging Mutual Benefit had violated Mont. Code Ann. § 25-13-902 and seeking to enjoin the sale.

Mutual Benefit removed the suit to the Butte Division of the United States District Court for the District of Montana. Judge Paul Hatfield conducted a hearing September 18, 1990 on Hern Farms' motion for a preliminary injunction. At the hearing, Mutual Benefit's counsel summarized the findings of Thomas Copley, an accountant who calculated the present value of Lake Seed's offer at $1,043,957.73. Hern Farms claims that several days later, it orally offered $1,050,000 for the property, but Mutual Benefit rejected the offer.

The district court denied the preliminary injunction on October 5, 1990, and Mutual Benefit gave Hern Farms until October 11, 1990 to exercise its right of first refusal by paying Mutual Benefit $1.1 million in cash. Hern Farms declined, saying it was unwilling to pay more than the present value of Lake Seed's offer. Mutual Benefit subsequently sold the property. Because the sale mooted Hern Farms' prayer for injunctive relief, the district court granted partial summary judgment for Mutual Benefit. Both parties then moved for summary judgment on the remaining claims. The district court granted summary judgment for Mutual Benefit on April 14, 1995, holding Mutual Benefit had complied with the statute when it offered the land to Hern Farms for the face value of Lake Seed's offer. Hern Farms timely appealed. [Footnotes omitted.]

The certified questions present a question of statutory interpretation. At issue is Montana's moratorium statute, § 25-13-

902, MCA (no longer effective after June 30, 1996), which provides as follows:

(1) A holder of foreclosed agricultural land shall, when leasing such land or any portion thereof to a third party, make a good faith offer to lease the land or portion thereof to the immediately preceding owner if such owner has financial resources and farm management skills and experience to assure a reasonable prospect of success in the proposed farming operation. The offer to lease land to the immediately preceding owner must be upon the same terms and conditions offered by a third party that are acceptable to the lessor.

(2) A holder of foreclosed agricultural land shall, when selling such land or any portion thereof to a third party, make a good faith offer to sell the land or portion thereof to the immediately preceding owner for the same price offered by a third party that is acceptable to the seller.

(3) An offer to lease to the immediately preceding owner is required each time the foreclosed agricultural land is leased to a third party, except that once the immediately preceding owner fails to meet the terms of a lease offer, the right to meet future offers is extinguished and no offer to lease is required. An offer to sell to the immediately preceding owner is required only the first time the property is sold to a third party.

(4) An offer sent by certified mail to the name and address filed by the immediately preceding owner under 25-13-904 is a good faith offer.

(5) This section does not apply to foreclosed agricultural land if such land is owned by the state pursuant to The Enabling Act (Act of February 22, 1889, Ch. 180, 25 Stat. 676). *(Terminates June 30, 1996--sec. 6, Ch. 472, L. 1987.)*

When Mutual Benefit Life (MBL) acquired the Hern farm through foreclosure, a right of first refusal accrued in Hern Farms to repurchase the farm from MBL for the same price offered by a third party that was acceptable to MBL.

In June of 1990, MBL received an acceptable time/price offer from Lake Seed Company to purchase the farm on the following terms: $1.1 million payable as follows: $200,000 down at closing and the

4

balance of $900,000 at 9.5% per annum over twenty-five years with principal payments of $40,000 annually, the first to be due in August, 1994 and with the possibility of an interest rate adjustment on August 1, 2000. Receipt of this offer triggered MBL's duty under the moratorium statute to extend a good faith offer to sell to Hern Farms for the "same price" offered by Lake Seed Company.

The question presented is whether "same price" when applied to a contract for a term of years means a cash equivalent of the total principal paid over the term of the contract; a cash payment equal to the present value of the total principal payout; or an extension of credit financing through a time/price offer on the same terms and conditions as those offered to a third party.

We note that subsections (1) and (2) of the moratorium statute use different wording. Subsection (1) requires a holder of foreclosed land who proposes to lease the land to offer to lease the land to the immediately preceding owner "*upon the same terms and conditions* offered by a third party that are acceptable to the lessor."

Subsection (2), on the other hand, requires the holder of foreclosed land, when selling such land, to offer to sell to the immediately preceding owner "for the *same price* offered by a third party. . . ." In addressing the first question certified to us, we attach significance to the fact that subsection (1), which pertains to leases, requires the "same terms and conditions" while subsection (2), which pertains to sales, does not apply that same

5

qualification. The role of the Court in interpreting statutory language is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA; Goyen v. City of Troy (1996), 276 Mont. 213, 221, 915 P.2d 824, 829. Since the legislature required that leases be offered to the preceding owner on the "same terms and conditions" but did not specifically impose that same requirement with regard to sales of the property, there is no expression of legislative intent requiring that a sale be offered to the preceding owner on the "same terms and conditions." Accordingly, we hold that § 25-13-902(2), MCA, does not require the holder of foreclosed land, who has received an offer to purchase the land, to offer the land to the immediately preceding owner under the "same terms and conditions" contained in the third party time/price offer.

That then brings us to the question as to what is required by the moratorium statute when it imposes an obligation to sell to the preceding owner at the "same price?" MBL contends that it satisfied its obligation by offering the property to the preceding owner for the cash price it would receive from the third party buyer; that is, the total of the principal payments it would receive over the course of the 25-year contract. Although it is agreed that the present value of Lake Seed's offer is less than the face value of the time/price offer of $1.1 million, MBL argues strenuously that "price" means "price;" that nothing in the definition of "price" requires a reduction to present value. Hern

6

Farms contends that "same price" means a sum of money or its present value equivalent.

In interpreting a statute, the prime consideration must be defining the objectives the legislature sought to achieve. Montana Wildlife Federation v. Sager (1980), 190 Mont. 247, 264, 620 P.2d 1189, 1199. The legislative intent is to be ascertained, in the first instance, from the plain meaning of the words used. Boegli v. Glacier Mountain Cheese Co. (1989), 238 Mont. 426, 429, 777 P.2d 1303, 1305. If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning is controlling and the Court need not go further and apply any other means of interpretation. Phelps v. Hillhaven Corp. (1988), 231 Mont. 245, 251, 752 P.2d 737, 741. In the case *sub judice*, it is clear from the face of the moratorium statute, § 25-13-902, MCA, that the legislature intended that the preceding owner be afforded the opportunity to reacquire the property, but only on the condition that the seller of the foreclosed property be placed in no worse a position than it would have been had it accepted the third party offer. In light of that intent, we reject MBL's contention that "price" means the cash equivalent of the total principal payments MBL would receive from the third party buyer over the course of the 25-year time/price offer. Such an interpretation would put MBL in a better position than under the time/price installment contract with the third party buyer since MBL would have immediate use of the $1.1 million to invest at a higher interest rate.

7

Noticeably absent from MBL's argument is any substantive discussion of the meaning of the word "same" as it modifies "price" in the moratorium statute. The statute requires that the seller offer the property for a price which is the "same" or the equivalent of the price offered to the third party. Same means identical, equal, equivalent, BLACK'S LAW DICTIONARY, 1341 (6th ed. 1990). As any banker or financial advisor would attest, $1.1 million paid over a period of 25 years simply is not the "same" as or equivalent to $1.1 million in cash paid at closing. We hold that there are two methods by which the seller can achieve equivalency and thereby honor the preceding owner's right of first refusal without placing itself in a worse position. MBL can offer to sell to Hern Farms at the same time/price offer of $1.1 million and on the same terms and conditions; that is, $200,000 down at closing with the balance of $900,000 paid over a 25-year contract at 9.5% per annum. In the alternative, if MBL does not wish to assume the risk of extending credit to Hern Farms through a time/price offer, it can offer to sell to Hern Farms for the $1.1 million price, discounted to present value, payable in full at closing.

In summary, we hold that § 25-13-902, MCA, does not *require* MBL to offer the property to Hern Farms on the same terms and conditions offered to the third party buyer. Thus we answer the first certified question in the negative. As to the second question, we hold that the statutory requirement that the seller of the foreclosed property offer the property to the preceding owner

8

at the "same price" means that the seller has two options. It can either sell to the preceding owner on the same terms and conditions as the time/price offer or it can offer to sell for the time/price offer discounted to present value.

The statute does not contain a formula for determining present value. Thus, if the parties are unable to agree as to present value, the court will have to entertain expert financial testimony and make a judicial finding as to present value.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9