SKINNER ENTERPRISES, INC., SKINNER

ENTERPRISES PROFIT SHARING TRUST,

and ANDY SKINNER as Trustee,

Petitioners and Appellants,

v.

LEWIS AND CLARK COUNTY BOARD OF

HEALTH, and LEWIS AND CLARK

CITY/COUNTY HEALTH DEPARTMENT,

JOAN BOWSHER, Director,

Respondents and Respondents.

No. 96-043.

Argued September 16, 1997.

Submitted October 28, 1997.

Rehearing Denied January 15, 1998.

Decided December 22, 1997.

Appeal from the District Court of Lewis and Clark County.

First Judicial District.

Honorable Jeffrey Sherlock, Judge.

Affirmed.

JUSTICE GRAY concurring in part and dissenting in part.

For Appellants: Palmer Hoovestal (argued), Attorney at Law,

Helena.

For Respondents: K. Paul Stahl (argued), Deputy County

Attorney, Lewis and Clark County, Helena.

For Amicus Curiae: Claudia Massman, Attorney at Law, Montana Department of Environmental

Quality, Helena; John K. Tabaracci, Sullivan & Tabaracci, Missoula (for Montana Association of

Realtorsþ); Susan B. Swimley, Deputy County Attorney, Gallatin

County, Bozeman (Gallatin City-County Health Board); David J. Patterson, University of Montana

Law School, Missoula (Montana Association of Counties); Martha McClain, Deputy County

Attorney, Missoula County, Missoula (Missoula City-County Board of Health and

Department of Health).

JUSTICE REGNIER delivered the Opinion of the Court.

In July 1995, petitioners Skinner Enterprises, Inc., Skinner Enterprises Profit Sharing Trust, and

Andy Skinner as trustee (Skinner Enterprises), filed a petition for a writ of mandamus and

declaratory judgment with the First Judicial District Court, Lewis and Clark County. In its petition,

Skinner Enterprises asked the court to issue a declaratory judgment that the Lewis and Clark

County Board of Health (Board) could not require an intermittent sand filter sewage treatment

system for the Green Acres Subdivision, and a writ of mandate ordering the Board to approve the

Green Acres Subdivision.

On December 11, 1995, the District Court issued an order denying Skinner Enterprises' petition

for declaratory judgment and writ of mandamus. Skinner Enterprises appealed, and on February 20, 1997, this Court issued an opinion reversing the decision of the District Court. See Skinner Enterprises, Inc. v. Lewis & Clark Cty. Board of Health (Mont. 1997), 54 St. Rep. 113. On March 3, 1997, respondents filed a petition for rehearing pursuant to Rule 34, [286 Mont. 260] M.R.App.P. On March 20, 1997, we granted respondents' petition for rehearing and ordered our February 20, 1997, opinion withdrawn. Following the submission of supplemental and amicus briefs, this Court heard oral argument on September 16, 1997. Having reviewed the entire record, we affirm the December 11, 1995, order of the District Court denying Skinner Enterprises' petition for declaratory judgment and writ of mandamus.

Generally at issue on the present appeal is whether the District Court erred in concluding that the Board is statutorily authorized to regulate sewage treatment systems in the Green Acres Subdivision thereby denying Skinner Enterprises' petition for a writ of mandamus and declaratory relief.

Specifically, we find the following issues dispositive on appeal:

1. Did the District Court err in concluding that the Montana Subdivision and Platting Act authorizes local boards of health to regulate subdivisions, regardless of size?

2. Did the District Court err in its interpretation and application of Sec. 50-2-116(1)(i), MCA?

3. Did the District Court err in implicitly concluding that the Board's own on-site wastewater treatment regulations did not obligate the Board to approve shallow-capped drainfields for the Green Acres subdivision?

4. Did the District Court err in implicitly concluding that local boards of health may promulgate

regulations which differ from comparable state regulations?

FACTUAL AND PROCEDURAL BACKGROUND

The Green Acres Subdivision is a proposed twenty-eight parcel subdivision located in the north-central Helena Valley. Skinner Enterprises Profit Sharing Trust is the current owner of Green Acres, and Skinner Enterprises, Inc., is the developer of Green Acres. Andy Skinner is the president of Skinner Enterprises, Inc., and the trustee of Skinner Enterprises Profit Sharing Trust. Andy Skinner purchased the property from Darwin Lindberg and Charles Westwood on May 10, 1993. Previously, on July 6, 1990, Lindberg had submitted the subdivision plans for Green Acres to the Lewis and Clark County Planning Board and received preliminary plat approval by the County Commissioners. By its terms, the approval was effective for one calendar year with extensions possible upon application. The Lewis and Clark County Commissioners granted this preliminary plat approval pursuant to the Subdivision [286 Mont. 261] Regulations of Lewis and Clark County. Shortly thereafter, the Montana Department of Health and Environmental Sciences1/ issued a conditional subdivision plat approval. On April 23, 1993, the County Commissioners granted a one-year extension of their preliminary plat approval of Green Acres. Before Skinner Enterprises could file a final subdivision plat, it was necessary for DEQ to review and certify, pursuant to the Sanitation in Subdivisions Act, Secs. 76-4-101 through-135, MCA, that Green Acres' water supply, sewage, and solid waste disposal facilities would comply with the Act. Skinner Enterprises therefore submitted the subdivision plans to DEQ for certification of the proposed water supply, sewage, and solid waste disposal systems. The DEQ issued a Certificate

of Subdivision Plat Approval on April 14, 1994, stating that the plans were in compliance with the requirements of the Sanitation in Subdivisions Act, Title 76, chapter 4, of the Montana Code Annotated. The DEQ specifically required that each individual sewage treatment system "consist of a septic tank and shallow-capped subsurface drainfield of such size and description as will comply with Title 16, Chapter 16, Sub-chapters 1, 3, and 6, ARM." (Emphasis added.) The DEQ issued a revised certificate of approval on July 13, 1995.

The Board refused to approve the plat, maintaining that the local on-site regulations would not permit the use of shallow-capped drainfields at the proposed subdivision site. The Board stated that its regulations, namely section 3.1(1)(d) of the Lewis and Clark County On-Site Wastewater Treatment Regulations, adopted pursuant to Sec. 50-2-116(1)(i), MCA, required intermittent sand filters for each lot of the proposed subdivision. To avoid losing the preliminary plat approval, the parties agreed to enter a Subdivision Improvements Agreement allowing them to litigate the type of sewage system required.

Skinner Enterprises requested a variance from section 3.1(1)(d) of the On-Site Wastewater Treatment Regulations, which the Board denied on February 23, 1995. Skinner Enterprises attempted to appeal the Board's decision to the DEQ, but the DEQ refused to hear the appeal on the stated basis that Green Acres was not subject to regulation by the Lewis and Clark County On-Site Wastewater Treatment Regulations promulgated pursuant to Sec. 50-2-116(1)(i), MCA.

1. The MDHES is now the Montana Department of Environmental Quality (DEQ) and shall hereinafter be referred to as DEQ. [286 Mont. 262]

On July 3, 1995, Skinner Enterprises filed a petition for writ of mandate and for declaratory judgment. Skinner Enterprises sought a writ of mandate pursuant to Secs. 27-26-101 through-403, MCA, ordering the Board to approve the Green Acres subdivision. Skinner Enterprises sought declaratory relief pursuant to Secs. 27-8-101 through-313, MCA, asking that the court issue a declaratory judgment stating that the Board could not require an intermittent sand filter sewage treatment system on Green Acres.

The District Court heard oral argument on August 11, 1995, and subsequently denied Skinner Enterprises' petition for declaratory judgment and writ of mandate in a December 11, 1995, order. In its order, the court concluded that local entities, including boards of health, have statutory authority to promulgate and enforce local subdivision sanitation regulations. The court further concluded that local approval of a final subdivision plat is not a ministerial, nondiscretionary legal duty for which a writ of mandate can issue.

On December 12, 1995, Skinner filed a timely notice of appeal from the District Court's order. In a February 20, 1997, decision, this Court reversed the decision of the District Court. See Skinner Enterprises, Inc. v. Lewis & Clark Cty. Board of Health (Mont. 1997), 54 St. Rep. 113. In our opinion, we concluded that neither Sec. 50-2-116(1)(i), MCA, nor Title 76, chapter 3, authorized the Board to regulate sanitation in subdivisions such as Green Acres. We additionally held the District Court erred in concluding that the Board's approval of a final subdivision plat pursuant to Sec. 76-4-122, MCA, is a nonministerial, discretionary, legal duty.

On March 3, 1997, respondents filed a petition for rehearing pursuant to Rule 34, M.R.App.P., on the grounds "[t]hat some fact, material to the decision, or some question decisive of the case

submitted by counsel, was overlooked by the court, or that the decision is in conflict with an express statute or controlling decision to which the attention of the court was not directed." Among respondents' arguments in support of their petition for rehearing was the allegation that the complete legislative history of Sec. 50-2-116, MCA, to which this Court's attention was not initially directed, clearly indicated the Legislature's intent to permit local boards of health to adopt sanitation regulations applicable to subdivisions. Respondents additionally conceded they failed to advise this Court that the Board in this case was created by an interlocal agreement. Respondents contend the fact that the Board was created by interlocal agreement offers additional support for the District Court's conclusion that the Montana Subdi- [286 Mont. 263] vision and Platting Act authorizes local entities, including local boards of health, to regulate sanitation in subdivisions. On March 20, 1997, this Court granted respondents' petition for rehearing, and ordered our February 20, 1997, opinion withdrawn. See 1997 WL 74145. The DEQ, the Montana Association of Realtors, the Montana Association of Counties, the Gallatin County City-County Health Board, and the Missoula City-County Board of Health each submitted amicus briefs, to which the parties responded.

DISCUSSION

The present appeal rests on the question of whether the District Court erred in concluding that the Lewis and Clark County Board of Health had authority to regulate sewage treatment systems in the Green Acres Subdivision, thereby denying Skinner Enterprises' petition for a writ of mandamus and declaratory relief.

In its order denying Skinner Enterprises' petition for declaratory judgment and writ of mandate, the District Court concluded that Montana's statutory scheme authorizes local boards of health to promulgate regulations regarding wastewater treatment and sewage disposal in subdivisions of any size. In so concluding, the court first analyzed Sec. 50-2-116(1)(i), MCA, and held that statutory provision, in conjunction with Title 76, chapter 4, authorizes local boards of health to regulate those subdivisions of land containing five or fewer parcels. The court then turned to the Montana Subdivision and Platting Act, codified at Secs. 76-3-101 through-625, MCA, and held it authorizes local boards of health to regulate sewage disposal in subdivisions of any size. For the purposes of our discussion, we will first address the District Court's interpretation and application of Montana's Subdivision and Platting Act to the present case.

ISSUE 1

Did the District Court err in concluding that the Montana Subdivision and Platting Act authorizes local boards of health to regulate subdivisions, regardless of size?

We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 687.

As noted, the District Court concluded that the Montana Subdivision and Platting Act authorizes local entities to regulate subdivisions, regardless of size. In reaching this conclusion, the court first [286 Mont. 264] points to Sec. 76-3-501(1), MCA, pursuant to which "the governing body of every county, city, and town shall adopt and provide for the enforcement and administration of

subdivision regulations ... for the regulation of sanitary facilities." Such regulations, the court recognizes, shall "prescribe standards for ... water supply and sewage and solid waste disposal that, at a minimum, meet the regulations adopted by the department of environmental quality" pursuant to Sec. 76-4-104, MCA. Section 76-3-504(6)(c), MCA. Relying on Secs. 76-3-501(1) and-504(6)(c), MCA, the court concludes that "local entities do indeed have statutory authority to regulate subdivisions, regardless of size" and that "[l]ocal regulations regarding subdivisions must be promulgated ... for all subdivisions in general."

On appeal, Skinner Enterprises argues the court erred in its interpretation and application of Secs. 76-3-501(1) and-504(6)(c), MCA. More specifically, Skinner Enterprises contends the court erroneously concluded the Subdivision and Platting Act empowers local boards of health to regulate sanitation in subdivisions, because the court failed to recognize the substantive difference between a local board of health and a governing body. Section 76-3-501(1), MCA, explicitly directs local "governing bod[ies]" to adopt and enforce regulations governing sanitary facilities in subdivisions. Implicit in the District Court's application of Sec. 76-3-501(1), MCA, to the present case is its conclusion that a local board of health is just such a governing body. Skinner Enterprises argues the court erred in collectively referring to local boards of health and governing bodies as "local entities," and in concluding the Subdivision and Platting Act authorized these "local entities" to adopt regulations regarding sanitation in subdivisions.

In contrast, respondents argue in their petition for rehearing that the Lewis and Clark County Board of Health qualifies as a governing body, as contemplated by the Subdivision and Platting Act, because it was created by interlocal agreement. In support of their contention that the Board

is, in fact, a governing body, respondents point to Sec. 50-2-106, MCA, which provides that "[b]y mutual agreement between the county commissioners and the governing body of the city, the county and a first-or second-class city or cities may form a city-county board of health." Respondents represent that the Lewis and Clark County Board of Health was created pursuant to just such an interlocal agreement, and argue it accordingly qualifies as a governing body authorized to regulate sanitation in subdivisions. [286 Mont. 265]

Section 76-3-103(6), MCA, however, specifically defines a governing body as "a board of county commissioners or the governing authority of a city or town organized pursuant to law." A local board of health does not qualify as a governing body according to this statutory definition, and is not subsumed within the definition. That a local board of health was created by interlocal agreement pursuant to Sec. 50-2-106, MCA, does not confer upon it status as a governing body. Indeed, where the Montana Legislature has sought to empower not only a governing body, but also a related or designated entity, it has done so by way of explicit language to that effect. For example, with respect to local review of a preliminary plat, Sec. 76-3-601, MCA, provides that the subdivider must present the preliminary plat to "the governing body or to the agent or agency designated by the governing body." (Emphasis added.)

Based on the foregoing, we conclude that a local board of health is not a governing body as contemplated by Sec. 76-3-103(6), MCA. Accordingly, we hold the District Court erred in concluding that the Montana Subdivision and Platting Act authorizes local boards of health to adopt and enforce regulations governing sanitation in subdivisions, regardless of size.

ISSUE 2

Did the District Court err in its interpretation and application of Sec. 50-2-116(1)(i), MCA?

As noted above, we review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 687.

In its order denying Skinner Enterprises' petition for writ of mandate and declaratory relief, the District Court additionally evaluated Sec. 50-2-116(1)(i), MCA, and held this statutory provision, interpreted in conjunction with Sec. 76-4-104(3)(a), MCA, authorizes local boards of health to promulgate regulations for those subdivisions containing five or fewer parcels of land.2/ The court did not, however, address the question of whether Sec. 50-2-116(1)(i), MCA, authorizes local boards of health to regulate major subdivisions, such as the

2. Minor subdivisions are those subdivisions with five or fewer lots, or parcels, whereas major subdivisions contain more than five lots. See, e.g., State ex rel. Florence-Carlton School District No. 15-16 v. Board of County Commissioners of Ravalli County (1978), 180 Mont. 285, 286, 590 P.2d 602, 603. [286 Mont. 266]

Green Acres subdivision, which contain more than five parcels of land. Indeed, because the court concluded that Title 76, chapter 3, authorizes local boards to regulate sanitation in all subdivisions, regardless of size, it did not need to address, as we do below, the question of whether Sec. 50-2-116(1)(i), MCA, authorizes local boards of health to regulate sanitation in all subdivisions.

A. Regulatory authority over minor subdivisions

Although not dispositive of the case on appeal, we find it provident to first review the District Court's conclusion, implicit in its order denying Skinner Enterprises' petition for writ of mandate and declaratory relief, that Sec. 76-4-104(3)(a), MCA, operating in conjunction with Sec. 50-2-116(1)(i), MCA, authorizes local boards of health to regulate sanitation in subdivisions containing five or fewer parcels of land.

Section 76-4-104, MCA, mandates that the DEQ "adopt reasonable rules ... including ... sanitary standards ..." to

provide for the review of the following divisions of land by a local department or board of health, as described in Title 50, chapter 2, part 1, if the local department or board of health employs a registered sanitarian or a registered professional engineer and if the department certifies under subsection (4) that the local department or board is competent to review these divisions of land:

(a) divisions of land containing five or fewer parcels, whenever each parcel will contain individual onsite water and sewage disposal facilities; and

(b) divisions of land proposed to connect to existing municipal water and wastewater systems previously approved by the department if no extension of the systems is required.

Section 76-4-104(3), MCA.

On appeal, the parties in fact agree that Sec. 76-4-104(3)(a), MCA, does not confer upon local boards of health the authority to regulate sanitation in even those subdivisions with fewer than five parcels. Rather, the parties agree, and we conclude, that Sec. 76-4-104(3)(a), MCA, delegates to

qualified local boards of health the authority to review, but not to regulate, sanitation in subdivisions with fewer than five parcels of land. Indeed, the authority to review a subdivision differs substantially from the authority to regulate a subdivision. A reviewing authority's function is limited to reviewing the proposed water supply, sewage, and solid waste disposal facilities, and then advising the DEQ of its recommendation for approval or disapproval of the subdivision. Section 76-4-128, MCA. Based on the foregoing, [286 Mont. 267] we hold the District Court erred in concluding that Sec. 76-4-104(3)(a), MCA, vests local boards of health with regulatory authority over minor subdivisions. By its plain language, Sec. 76-4-104(3)(a), MCA, delegates to local boards of health the power to review select subdivisions, but not the power to promulgate regulations.

Having so concluded, we must next discuss that issue not reached by the District Court, and determine whether Sec. 50-2-116(1)(i), MCA, independently bestows upon local boards of health the authority to regulate sanitation in all subdivisions.

B. Regulatory authority over all subdivisions

With respect to the powers and duties of local boards of health, Sec. 50-2-116, MCA, provides in pertinent part that local boards shall,

subject to the provisions of 50-2-130, adopt necessary regulations that are not less stringent than state standards for the control and disposal of sewage from private and public buildings that is not regulated by Title 75, chapter 6, or Title 76, chapter 4.

Section 50-2-116(1)(i), MCA.

By its terms, Sec. 50-2-116(1)(i), MCA, explicitly authorizes local boards of health to promulgate regulations for the control and disposal of sewage which is not otherwise regulated by the state pursuant to Title 76, chapter 4 3/. Thus, our first inquiry is into the scope and application of Title 76, chapter 4, pursuant to which the DEQ derives authority to regulate sanitation in subdivisions. Title 76, chapter 4, part 1, provides for state regulation by the DEQ of sanitation in subdivisions. Specifically, Sec. 76-4-104(1), MCA, mandates that the DEQ "adopt reasonable rules, including adoption of sanitary standards, necessary for administration and enforcement" of sanitation in subdivisions. For the purposes of the state's regulatory authority over sanitation in subdivisions, Sec. 76-4-102(13), MCA, defines a subdivision as "a division of land or land so divided that creates one or more parcels containing less than 20 acres." Section 76-4-103, MCA, further explains that "[a] subdivision shall comprise only those parcels of less than 20 acres which have been created by a division of land." The state may, accordingly, regulate sanitation in subdivisions which contain parcels with fewer than twenty acres each, but is statutorily precluded from regulating those subdivisions in which each parcel of land contains more than twenty acres.

3. The provision of Title 75, chapter 6, which deal with Public Water Supply are not at issue in this case. [286 Mont. 268]

Thus, that portion of Sec. 50-2-116(1)(i), MCA, which mandates that local boards of health adopt regulations "for the control and disposal of sewage ... that is not regulated by ... Title 76, chapter 4," clearly directs local boards of health to regulate sanitation in subdivisions which contain parcels of more than twenty acres each. Indeed, the parties agree that Sec. 50-2-116, MCA,

requires that local boards of health adopt regulations governing sanitation in subdivisions with parcels of more than twenty acres.

The critical issue in this case, however, is whether Sec. 50-2-116(1)(i), MCA, authorizes local boards of health to promulgate regulations for those subdivisions, such as the Green Acres Subdivision, comprised of parcels with fewer than twenty acres each. In this case, the Lewis and Clark County Board of Health refused to approve the plat for the Green Acres subdivision, citing to Section 3.1(1)(d) of the Lewis and Clark County On-Site Wastewater Treatment Regulations as the basis for its decision. The Lewis and Clark County On-Site Wastewater Treatment Regulations, including Section 3.1(1)(d), were specifically promulgated pursuant to Sec. 50-2-116(1)(i), MCA. Resolution of this appeal thus depends upon an accurate interpretation of Sec. 50-2-116(1)(i), MCA. As noted above, because the District Court concluded that local boards of health derive such authority from Montana's Subdivision and Platting Act, it did not reach the pivotal question of whether Sec. 50-2-116(1)(i), MCA, authorizes local boards of health to regulate sanitation in subdivisions comprised of parcels with fewer than twenty acres.

Skinner Enterprises argues that, because Title 76, chapter 4, provides for DEQ regulation of sanitation in major and minor subdivisions containing parcels with fewer than twenty acres, local boards of health can derive no authority from Sec. 50-2-116(1)(i), MCA, to similarly regulate those subdivisions. In so arguing, Skinner Enterprises relies primarily upon the plain language of Sec. 50-2-116(1)(i), MCA, which mandates that local boards of health adopt regulations for the control and disposal of sewage that is not regulated by the state pursuant to Title 76, chapter 4. Skinner Enterprises correctly notes that neither Sec. 50-2-116, MCA, nor any other provision of

the Montana Code, contains specific language granting local boards the authority to regulate major or minor subdivisions comprised of parcels with fewer than twenty acres each. Therefore, Skinner Enterprises urges, the DEQ retains all regulatory authority over sanitation in all such subdivisions, including the Green Acres subdivision at issue in the present case. [286 Mont. 269]

Despite the absence of specific delegatory language in Sec. 50-2-116(1)(i), MCA, respondents nonetheless argue the Montana Legislature intended Sec. 50-2-116(1)(i), MCA, to conform with past practice and to confer upon local boards of health discretionary regulatory authority over subdivisions comprised of parcels with fewer than twenty acres. Respondents urge that Sec. 50-2-116(1)(i), MCA, is ambiguous in two respects, and therefore suggest that to accurately interpret the statute this Court must turn to evidence of legislative history to ascertain the Legislature's intent.

Respondents argue that Sec. 50-2-116(1)(i), MCA, is ambiguous when construed in conjunction with Sec. 76-4-122, MCA. Specifically, respondents argue that for this Court to conclude Sec. 50-2-116(1)(i), MCA, divests local boards of health of their longstanding authority to regulate sanitation in all subdivisions would be for it to render the terms of Sec. 76-4-122, MCA, inoperative and reach an absurd result. To avoid such a result, respondents argue, this Court must construe these statutes in a way which gives meaning and effect to both Sec. 50-2-116(1)(i), MCA, and Sec. 76-4-122, MCA.

Respondents additionally argue that, because local boards of health were statutorily authorized to regulate sanitation in subdivisions prior to 1991, had the Legislature intended to divest them of that

authority by way of the 1991 amendment to Sec. 50-2-116, MCA, it would have done so with explicit prohibitory language to that effect. Because the Legislature included no language of prohibition, respondents contend, it clearly did not intend to divest local boards of their regulatory authority. At a minimum, respondents argue, the absence of any explicit language divesting local boards of their authority to regulate sanitation in subdivisions with parcels containing fewer than twenty acres creates an ambiguity as to whether the Legislature indeed intended to so diminish the regulatory authority of local boards of health.

1. Section 76-4-122, MCA

In support of their assertion that this Court must resort to legislative history in this case, respondents argue that Sec. 50-2-116(1)(i), MCA, is ambiguous when construed in conjunction with Sec. 76-4-122, MCA, which provides in pertinent part that:

(1) The county clerk and recorder shall not file or record any map or plat showing a subdivision unless it complies with the provisions of this part.

(2) A county clerk and recorder may not accept a subdivision plat for filing until one of the following conditions has been met: [286 Mont. 270]

(a) the person wishing to file the plat has obtained approval of the local health officer having jurisdiction and has filed the approval with the reviewing authority, and the reviewing authority has indicated by stamp or certificate that it has approved the plat and plans and specifications and that the subdivision is subject to no sanitary restriction whenever reviewing authority approval is necessary; or

(b) whenever reviewing authority approval is not necessary, the person wishing to file the plat has obtained a certificate from the governing body that the subdivision is inside a master planning area or a class 1 or class 2 municipality and will be provided with municipal facilities for the supply of water and disposal of sewage and solid waste.

Respondents argue the express terms of Sec. 76-4-122(2)(a), MCA, require that a person seeking to file a subdivision plat with the county clerk and recorder obtain both state review and local approval. Respondents note that the Legislature does not perform useless acts, and thus argue the Legislature would not require both state and local approval if local approval were merely predicated upon the very rules and regulations used to obtain state approval. Respondents contend that local approval occurs under rules and regulations adopted pursuant to Sec. 50-2-116, MCA, and thus differs substantively from approval by the reviewing authority, be it either the local board of health pursuant to Sec. 76-4-104(3)(b), MCA, or the DEQ, which occurs pursuant to DEQ rules and regulations.

In response, Skinner Enterprises points to that portion of Sec. 76-4-122(2)(a), MCA, which specifies that a person need only obtain approval from the local health officer "having jurisdiction." In this case, Skinner Enterprises argues the local health officer did not have regulatory jurisdiction over the Green Acres subdivision, because, pursuant to Sec. 50-2-116(1)(i), MCA, it has no authority to regulate sanitation in subdivisions otherwise regulated by the state pursuant to Title 76, chapter 4. Skinner Enterprises argues that Green Acres, a major subdivision containing parcels with fewer than twenty acres each, is clearly regulated by the state pursuant to Title 76, chapter 4,

and that the local health officer thus has no regulatory jurisdiction. Accordingly, Skinner Enterprises argues a decision by the local board of health pursuant to Sec. 76-4-122(2)(a), MCA, approving or denying the Green Acres subdivision, would have to be a ministerial, nondiscretionary one because the local board had no regulatory jurisdiction [286 Mont. 271] pursuant to Sec. 50-2-116(1)(i), MCA, to promulgate regulations upon which it could premise a discretionary decision to either approve or disapprove the subdivision.

Section 76-4-122(2)(a), MCA, does indeed require that, before filing a subdivision plat with the county clerk and recorder, a person obtain approval from the local board of health, by and through "the local health officer having jurisdiction," as well as approval from "the reviewing authority." As discussed above, the DEQ may delegate to qualified local boards of health the authority to review select subdivisions, including those with five or fewer parcels. Section 76-4-104(3), MCA. Thus, depending on the subdivision in question, the reviewing authority may be either the local board of health or the DEQ. See Sec. 76-4-102(9), MCA (defining "reviewing authority" as "the department or a local department or board of health certified to conduct a review under 76-4-104"). Even where the DEQ has properly delegated to the local board of health the authority to review a proposed subdivision, however, the DEQ must still make a final decision on the subdivision. Section 76-4-128(2), MCA. Thus, pursuant to Sec. 76-4-122(2)(a), MCA, a person must ultimately obtain both state and local approval by the board of health before filing a subdivision plat with the county clerk and recorder.

Looking to Sec. 50-2-116(1)(i), MCA, Skinner Enterprises argues for an interpretation of

Montana's statutory scheme which would confer upon local boards of health no regulatory authority over sanitation in subdivisions otherwise regulated by the state pursuant to Title 76, chapter 4. To construe Sec. 50-2-116(1)(i), MCA, as thus suggested by Skinner Enterprises, would be to create an irreconcilable conflict between Sec. 50-2-116(1)(i), MCA, and that portion of Sec. 76-4-122(2)(a), MCA, which clearly requires the local board of health with jurisdiction, by way of its local health officer, to approve all subdivision plats. Were local boards, as Skinner Enterprises contends, without authority to promulgate regulations for the control and disposal of sewage, this would not deprive them of jurisdiction pursuant to Sec. 76-4-122(2)(a), MCA, but would instead simply render their approval meaningless. Thus, to hold approval by the local board of health is a ministerial, nondiscretionary act which occurs pursuant to the very rules and regulations promulgated by the state would indeed be to render Sec. 76-4-122(2)(a), MCA, inoperative.

In construing a statute, this Court must read and construe each statute as a whole so as to avoid an absurd result "and to give effect to the purpose of the statute." Christenot v. State, Dept. of [286 Mont. 272] Commerce (1995), 272 Mont. 396, 401, 901 P.2d 545, 548. Indeed "[s]tatutes do not exist in a vacuum, [but] must be read in relationship to one another to effectuate the intent of the statutes as a whole." Marsh v. Overland (1995), 274 Mont. 21, 28, 905 P.2d 1088, 1092. This Court "will, if possible, construe statutes so as to give effect to all of them." Mercury Marine v. Monty's Enterprises, Inc. (1995), 270 Mont. 413, 417, 892 P.2d 568, 571; Sec. 1-2-101, MCA. When more than one statute applies to a given situation, such construction, if possible, is to

be adopted as will give effect to all. Schuman v. Bestrom (1985), 214 Mont. 410, 415, 693 P.2d 536, 538.

In the present case, the terms of Sec. 50-2-116(1)(i), MCA, mandate that local boards of health "adopt regulations ... for the control and disposal of sewage ... that is not regulated by ... Title 76, chapter 4." Thus, at first glance, it appears that Sec. 50-2-116(1)(i), MCA, does not confer upon local boards of health the authority to promulgate regulations regarding sanitation in subdivisions, such as Green Acres, which contain parcels with fewer than twenty acres each, because those subdivisions are otherwise regulated by the state pursuant to Title 76, chapter 4. Having held, however, that such a construction of Sec. 50-2-116(1)(i), MCA, would conflict with the express terms of Sec. 76-4-122(2)(a), MCA, we determine such an application would lead to an absurd result. To avoid this result, as respondents argue, this Court must review the legislative history to accurately ascertain the intent of the Legislature.

2. Language of prohibition

Respondents additionally argue the absence of any explicit language in Sec. 50-2-116(1)(i), MCA, prohibiting local boards of health from regulating sanitation in subdivisions with parcels containing fewer than twenty acres creates an ambiguity as to whether the Legislature intended to so limit their regulatory authority. Although Sec. 50-2-116(1)(i), MCA, precisely mandates that local boards of health regulate sanitation in those subdivisions not regulated by the state pursuant to Title 76, chapter 4, it is utterly silent with respect to whether local boards have discretionary authority to regulate those subdivisions, such as Green Acres, which are in fact regulated by the state. Thus, Sec. 50-2-116(1)(i), MCA, neither prohibits local boards of health from regulating subdivisions

with parcels containing fewer than twenty acres, nor does it explicitly empower them to do so. In support of its argument, Skinner Enterprises points to that canon of statutory construction pursuant to which this Court is "simply to ascertain and declare what is in terms or in substance [286 Mont. 273] contained" within the statute, but is "not to insert what has been omitted, or to omit what has been inserted." Section 1-2-101, MCA. It is not this Court's office, Skinner Enterprises asserts, to insert what the Legislature did not, and to construe Sec. 50-2-116(1)(i), MCA, as providing local boards of health with discretionary authority to regulate subdivisions already regulated by the state. Skinner Enterprises maintains that Sec. 50-2-116(1)(i), MCA, expressly retains regulation of all subdivisions comprised of parcels with fewer than twenty acres, with the state.

Indeed, interpreted in a vacuum, the plain language of Sec. 50-2-116(1)(i), MCA, does not, on its face, explicitly empower local boards of health to promulgate regulations regarding sanitation in subdivisions with parcels containing fewer than twenty acres. Neither does the language explicitly prohibit local boards of health from adopting sanitation regulations for subdivisions with parcels containing fewer than twenty acres. Thus the ambiguity, argue respondents. Respondents further urge against an interpretation which would deprive local boards of this regulatory authority because it takes into account neither the statutory context in which Sec. 50-2-116, MCA, appears, nor its legislative history.

Initially, with respect to legislative history, the parties agree that, prior to 1991, local boards of health had authority to regulate sanitation in all subdivisions, including those with parcels containing

fewer than twenty acres. In 1991, however, the Montana Legislature amended Sec. 50-2-116, MCA, to include the provision at issue in this case. Section 50-2-116(1)(i), MCA. By adding the following language to Sec. 50-2-116(1), MCA, the Legislature specifically mandated that local boards: "(i) adopt necessary regulations that are no less stringent than state standards for the control and disposal of sewage from private and public buildings that is not regulated by Title 75, chapter 6, or Title 76, chapter 4."

The parties vigorously dispute the implications of this 1991 amendment. Skinner Enterprises argues the amendment effectively diminished the regulatory authority held by local boards of health, in fact divesting them of their longstanding power to regulate sanitation in subdivisions otherwise regulated by the state pursuant to Title 76, chapter 4.

In contrast, respondents argue the 1991 amendment to Sec. 50-2-116(1)(i), MCA, actually expanded local board of health regulatory authority. Respondents note the amendment commands local boards of health to adopt regulations for those subdivisions containing par- [286 Mont. 274] cels with more than twenty acres, because those subdivisions are not regulated by the state pursuant to Title 76, chapter 4. Respondents additionally argue, however, that Sec. 50-2-116(1)(i), MCA, continues to permit, but does not mandate, local boards of health to regulate those subdivisions containing parcels with fewer than twenty acres which are regulated by the state pursuant to Title 76, chapter 4. Respondents point to the absence of specific language divesting local boards of their authority to regulate subdivisions also regulated by the state, and argue that had the Legislature intended to so diminish local board of health regulatory authority, it

would have done so with specific language to that effect. Although respondents argue Sec. 50-2-116(1)(i), MCA, is clear on this point, they alternatively urge that the absence of explicit statutory language divesting local boards of their authority at a minimum renders Sec. 50-2-116(1)(i), MCA, ambiguous.

We conclude the absence of specific language either granting or prohibiting local boards from regulating subdivisions with parcels containing fewer than twenty acres renders Sec. 50-2-116(1)(i), MCA, ambiguous, and therefore compels us to investigate the legislative history to derive the precise intent of the Legislature. Indeed, review of pertinent legislative history indicates that for us to construe Sec. 50-2-116(1)(i), MCA, as prohibiting local boards of health from regulating those subdivisions with parcels containing fewer than twenty acres, would be for us to reach a result clearly not intended by the Legislature.

In relying on evidence of legislative history to accurately interpret Sec. 50-2-116(1)(i), MCA, we are, of course, aware that

[o]ur function in construing and applying statutes is to effectuate the legislature's intent. To determine legislative intent, we first look to the plain meaning of the words used in the statute. If the legislature's intent can be determined by the plain language of the words used, we may not go further and apply other means of interpretation. It is only when the intent cannot be determined from the language of the statute that we will examine legislative history.

Thomas Brothers v. Cargill, Inc. (1996), 276 Mont. 105, 110, 915 P.2d 226, 229 (quoting Gulbrandson v. Carey (1995), 272 Mont. 494, 500, 901 P.2d 573, 577) (citations omitted).

With respect to statutory construction, we have identified "defining the objectives the legislature sought to achieve" as our "prime consideration." Hern Farms, Inc. v. Mutual Benefit Life Insurance Co. (1996), 280 Mont. 436, 441, 930 P.2d 84, 87. [286 Mont. 275]

In the present case, the legislative history of Sec. 50-2-116(1)(i), MCA, clearly reveals an intent on the part of the Legislature to expand, rather than diminish, the authority held by local boards of health with respect to regulating sanitation in subdivisions. In 1991, neither the state, pursuant to Title 76, chapter 4, nor local governing bodies, pursuant to the Montana Subdivision and Platting Act, had statutory authority to regulate subdivisions comprised of parcels with more than twenty acres.4/ Thus, pursuant to the statutory scheme in effect prior to 1991, no one entity was required to regulate sanitation in those subdivisions comprised of parcels with more than twenty acres each. As a result of a continued increase in residential development, Montana was facing a potentially serious health problem. Many septic systems were being installed without being subject to any regulation whatsoever.

In response to this problem, the Legislature enacted H.B. 162, to "fill in the gaps" and mandate that local boards of health regulate those subdivisions not otherwise regulated by the state. The title of House Bill 162, pursuant to which the Legislature enacted the 1991 amendments to Sec. 50-2-116(1)(i), MCA, is:

An act requiring the Board of Health and Environmental Sciences to establish minimum standards for the control and disposal of sewage from private and public buildings;

requiring local boards of health to adopt regulations that are no less stringent than state standards for the control and disposal of sewage from private and public buildings; providing for appeal of a local variance to the Department of Health and Environmental Sciences; amending sections 50-2-116 and 75-5-305, MCA; and providing an applicability date.

As a rule, the Legislature titles a bill to reflect what the bill does. The title of H.B. 162 says nothing about divesting from local boards of health their discretionary authority to regulate sanitation in subdivisions also regulated by the state pursuant to Title 76, chapter 4.

Moreover, the statement of intent attached to H.B. 162 provides in pertinent part that:

Following the adoption of minimum state standards, local boards of health shall adopt regulations for new septic and sewage dis-

4. The Montana Legislature has since amended the Montana Subdivision and Platting Act to authorize local governing bodies to regulate sanitation in those subdivisions comprised of parcels with 160 or fewer acres each. [286 Mont. 276]

posal systems that are no less stringent than state standards. Local governments are not required to regulate septic and sewage disposal systems that the department of health and environmental sciences reviews and regulates under the requirements of Title 75, chapter 6, pertaining to public water systems or the requirements of Title 76, chapter 4, pertaining to subdivisions.

As with the title of H.B. 162, the statement of intent says nothing about diminishing or taking away local board of health authority to regulate sanitation in subdivisions. Rather, that portion of the statement of intent which provides that "[l]ocal governments are not required to regulate septic and sewage disposal systems" otherwise regulated by the state pursuant to Title 76, chapter 4, clearly evidences the Legislature's intent that local government authority to regulate those systems be discretionary. There is simply nothing in the legislative history of H.B. 162 that even hints that the Legislature intended to remove from local boards of health the authority to adopt sanitary regulations in all subdivisions.

To give effect to the intent of the Legislature and to avoid reaching an absurd result, we hold that Sec. 50-2-116(1)(i), MCA, confers upon the board discretionary authority to regulate sanitation in the Green Acres subdivision. Although we do so by way of a different analysis, we conclude, as did the District Court, that local boards of health have statutory authority to regulate subdivisions, regardless of size.

ISSUE 3

Did the District Court err in implicitly concluding that the Board's own on-site wastewater treatment regulations did not obligate the Board to approve shallow-capped drainfields for the Green Acres subdivision?

We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 687.

Assuming we hold, as we have above, that the Board has statutory authority to regulate sanitation

in the Green Acres subdivision, Skinner Enterprises argues the District Court nonetheless erred in denying its petition for writ of mandamus and declaratory judgment for two reasons. First, Skinner Enterprises asserts the court erred in refusing to grant the relief requested because, in light of the uncontroverted facts, the Board could not refuse to approve shallow-capped drainfields. Second, Skinner Enterprises argues the court erred in [286 Mont. 277] denying its petition because the on-site wastewater treatment regulations in effect in 1990 indicated that shallow-capped drainfields were in fact appropriate for Green Acres. A. Uncontroverted facts

Skinner Enterprises first argues the uncontroverted facts demonstrate the soil permeability rate on each lot in the Green Acres subdivision does not exceed 20.0 inches per hour. The regulation pursuant to which the Lewis and Clark County Board of Health has refused to approve shallow-capped drainfields for the Green Acres subdivision provides as follows:

In those areas where there is known or potential groundwater at less than 10 feet

from the natural ground surface during part or all of the year, and the soil permeability

is greater than 20.0 inches per hour, an intermittent sand filter shall be mandatory.

Skinner Enterprises asserts there exists uncontroverted evidence that the soil permeability rate on each lot in the Green Acres subdivision does not exceed 20.0 inches per hour, and accordingly argues the Board could not refuse to approve shallow-capped drainfields. As Skinner Enterprises correctly notes, nowhere in its order denying Skinner Enterprises' petition for writ of mandamus and declaratory relief does the District Court discuss the Board's evaluation of the evidence before it or its decision to require intermittent sand filters on the Green Acres subdivision. In light of the

relief requested by Skinner Enterprises in this case, we conclude the District Court did not err in failing to review and evaluate the sufficiency of the evidence upon which the Board premised its decision to require intermittent sand filters.

Skinner Enterprises initiated this action in pursuit of declaratory relief under Secs. 27-8-101 through-313, MCA. Skinner Enterprises asked that the District Court issue a declaratory judgment stating that the Board could not require an intermittent sand filter sewage treatment system on Green Acres. By making an issue of the District Court's failure to evaluate the factual basis for the Board's decision requiring intermittent sand filters, Skinner Enterprises is, in effect, attempting to appeal from that decision by the Board.

Pursuant to Secs. 27-8-101 through-313, MCA, review of the factual basis underlying the Board's decision to require intermittent sand filters is not a proper subject for a declaratory judgment. Skinner Enterprises additionally initiated this action seeking a writ of mandate pursuant to Secs. 27-26-101 through-403, MCA, ordering the Board to approve the Green Acres subdivision. As [286 Mont. 278] discussed above, in light of our holding that the Board's decision to approve a subdivision is a discretionary one, the District Court did not err in denying Skinner Enterprises' request for a writ of mandate. B. Applicable regulations

Skinner Enterprises next argues the court erred in denying its petition because, even if the soil permeability rate on each parcel in Green Acres exceeded 20.0 inches per hour, the on-site wastewater treatment regulations in effect in 1990 indicated that shallow-capped drainfields were in fact appropriate. In support of this assertion, Skinner Enterprises points to Sec. 76-3-501(2),

MCA, pursuant to which "[r]eview and approval or disapproval of a subdivision under this chapter may occur only under those regulations in effect at the time an application for approval of a preliminary plat or for an extension under 76-3-310 is submitted to the governing body."

Skinner Enterprises notes that the Lewis and Clark County Commissioners approved the Green Acres Subdivision preliminary plat on July 6, 1990, at which time the Lewis and Clark County Board of Health's on-site wastewater treatment regulations mandated shallow standard treatments systems. In contrast with the present regulation upon which the Board premised its decision to require intermittent sand filters at Green Acres, that regulation in effect in 1990 provided that:

In those areas where there is known or potential groundwater at less than 10 feet

from the natural ground surface during part or all of the year, and the soil permeability

is greater than 20.0 inches per hour, a shallow standard treatment field installation

shall be mandatory.

(Emphasis added.)

As noted, Skinner Enterprises argues for application of this 1990 regulation pursuant to Sec. 76-3-501(2). By its terms, Sec. 76-3-501(2), MCA, applies specifically to review and approval or disapproval undertaken pursuant to Title 76, chapter 3. In light of our holding that local boards of health derive authority to regulate subdivisions from Sec. 50-2-116(1)(i), MCA, but not from Title 76, chapter 3, we conclude that Sec. 76-3-501(2), MCA, does not mandate that the Board apply that regulation in effect in 1990.

Based on the foregoing, we conclude the District Court did not err in concluding, in effect, that the Board's own on-site wastewater treatment regulations did not obligate the Board to approve

shallow-capped drainfields for the Green Acres subdivision. [286 Mont. 279]

ISSUE 4

Did the District Court err in implicitly concluding that local boards of health may promulgate regulations which differ from comparable state regulations?

Skinner Enterprises argues the District Court erred in implicitly concluding that a local board of health may promulgate regulations which differ from comparable state regulations, and in concluding that a local board of health need not defer to the DEQ where their respective regulations require different sewage treatment systems. In its order denying Skinner Enterprises' petition, the court concluded, in part, that "[a] county clearly has statutory authority to promulgate and enforce local subdivision regulations and is not required to approve a subdivision plat merely because DEQ has issued its own approval of such plat." In support of its argument that the court erred in so concluding, Skinner Enterprises points to Sec. 7-1-113, MCA, which provides in pertinent part that "[a] local government with self-government powers is prohibited the exercise of any power in a manner inconsistent with state law or administrative regulation in any area affirmatively subjected by law to state regulation or control." Skinner Enterprises argues that, by requiring intermittent sand filters on the lots at Green Acres, the Board was exercising its regulatory power in a manner inconsistent with that of the state, in violation of Sec. 7-1-113, MCA.

Respondents, in contrast, argue that local boards of health may promulgate local regulations which are more stringent than comparable state regulations. Respondents point to Sec. 50-2-130(2) and (4), MCA, pursuant to which local boards of health may promulgate local regulations more

stringent than comparable state regulations so long as they comply with certain procedural requirements. Indeed, Skinner Enterprises concedes that Sec. 50-2-130, MCA, clearly allows local boards of health to adopt regulations for the implementation of Sec. 50-2-116(1)(i), (2)(k)(iii), or (2)(k)(v), MCA, which are more stringent than those promulgated by the state. In the present case, however, Skinner Enterprises argues that Sec. 50-2-116(1)(i), MCA, does not authorize the Board to regulate sanitation in the Green Acres subdivision. As discussed at length above, however, we do indeed conclude that Sec. 50-2-116(1)(i), MCA, confers upon the Board the authority to regulate sanitation in the Green Acres subdivision. [286 Mont. 280]

Skinner Enterprises next argues that, although local boards may adopt regulations which are more stringent than the state's, they cannot promulgate regulations which are in fact less stringent than, and therefore in direct conflict with, state standards. Section 50-2-116(1)(i), MCA, specifically states that local boards of health adopt regulations "not less stringent than state standards for the control and disposal of sewage." In the present case, Skinner Enterprises argues that the intermittent sand filter system required by the Board is considered an experimental alternative system by the DEQ, and that the applicable local regulations are thus less stringent than state standards.

Whether a shallow capped drainfield or an intermittent sand filter will provide a better level of treatment involves a factual dispute which is not the proper subject matter for the present appeal. As previously stated, the District Court was asked to issue a writ of mandate and declaratory judgment which focused on the statutory authority of the local board of health. Neither the relief

sought nor the provisions of Sec. 27-8-101, MCA, envision a review of such a factual dispute.

CONCLUSION

Based on the foregoing, we hold that Sec. 50-2-116(1)(i), MCA, confers upon the Board discretionary authority to regulate sanitation in the Green Acres subdivision. Accordingly, we affirm the December 11, 1995, order of the District Court denying Skinner Enterprises' petition for declaratory judgment and writ of mandamus.

CHIEF JUSTICE TURNAGE, JUSTICES HUNT, NELSON, LEAPHART and

DISTRICT JUDGE LANGTON, sitting for JUSTICE TRIEWEILER concur.

JUSTICE GRAY, concurring in part and dissenting in part.

I concur in the Court's opinion on issues 1, 3 and 4. I specially concur in that opinion as to issue 2, joining in the result reached by the Court, but not in everything said in reaching that result. Specifically, it is my view that the "language of prohibition" portion of the Court's opinion is not properly a part of the opinion and is, in any event, incorrectly analyzed.

In the portion of the opinion immediately preceding that captioned "language of prohibition," we correctly concluded that Sec. 50-2-116(1)(i), MCA, is ambiguous when read together--as it must be--with Sec. 76-4-122, MCA. For that reason, we determined that it was [286 Mont. 281] necessary to "review the legislative history to accurately ascertain the intent of the Legislature." The logical and appropriate next step is to proceed directly to an examination of the legislative history of Sec. 50-2-116(1)(i), MCA.

The Court does not take this logical and appropriate next step, however. Instead, it addresses an alternative argument propounded by the respondents for examining the legislative history of the

statute, the so-called "language of prohibition" approach. I submit that, having determined that the ambiguity created by reading two related statutes together provides a proper basis for review of the legislative history of Sec. 50-2-116(1)(i), MCA, it is improper to address whether another basis exists. For that reason, it is my opinion that the portion of the Court's opinion which addresses "language of prohibition" is, in its entirety, obiter dictum.

Moreover, I disagree with the Court's analysis of the respondents' "language of prohibition" argument. First, much of that analysis merely reiterates the analysis in the preceding section of the opinion regarding the fact that the ambiguity arises not from the plain language of Sec. 50-2-116(1)(i), MCA, but from reading that statute together with Sec. 76-4-122(2)(a), MCA. Thus, portions of the "language of prohibition" analysis are not relevant to that section of the opinion.

Second, I am concerned that, because the Court includes the "language of prohibition" section, it will be read as precedent for the proposition that "silence" on a subject not necessarily the same as the subject to which a statute is directed creates, in and of itself, an ambiguity in the statute. It strikes me as unwise and inappropriate to conclude--as the Court does in the "language of prohibition" section--that a statute clear on its face with regard to what it does authorize is ambiguous because it does not also expressly prohibit other conduct not directly authorized. Such a conclusion opens the door to large areas of appellate statutory construction arguments which heretofore--and properly--would have involved only a "plain meaning" analysis.

For these reasons, I cannot agree with either the inclusion of, or the analysis contained in, the

"language of prohibition" portion of the Court's opinion on issue 2. I do, however, concur in the result the Court reaches on that issue, which properly should be reached by proceeding directly from the conclusion that reading two statutes together creates an ambiguity necessitating review of the recent legislative history of Sec. 50-2-116(1)(i), MCA, to an examination of that legislative history.