FILED

August 12 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0260

DA 14-0260

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 241

---

MONTANA DEPARTMENT OF REVENUE,

Plaintiff and Appellant,

v.

PRICELINE.COM, INC.; TRAVELWEB, LLC;
TRIP NETWORK, INC.; ORBITZ, LLC;
EXPEDIA, INC.; HOTELS.COM, L.P.;
HOTWIRE, INC.; TRAVELOCITY.COM, L.P.;
SUITE59.COM, LLC; and DOES 1 THROUGH
1000, INCLUSIVE,

Defendants and Appellees.

---

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDV-2010-1056
                Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                John W. Crongeyer (argued), Crongeyer Law Firm, P.C.; Atlanta,
                Georgia

                Teresa G. Whitney, Special Assistant Attorney General, Montana
                Department of Revenue; Helena, Montana

                David R. Paoli, Paoli Law Firm; Missoula, Montana

                William Q. Bird, Kristen L. Beightol, Bird Law Group, P.C.; Atlanta,
                Georgia

                Robert Finnell, The Finnell Firm; Rome, Georgia

For Appellees:

    Michael Green (argued), D. Wiley Barker, Crowley Fleck PLLP;
    Helena, Montana

    Elizabeth B. Harrington, Michael W. Weaver, McDermott Will
    & Emery, LLP; Chicago, Illinois

    Deborah Sloan, Emmanuel Ubinas, Jones Day; Dallas, Texas

    Brian Stagner, Scott Wiehle, Kelly Hart & Hallman; Fort Worth,
    Texas

    Darrel J. Hieber, Skadden, Arps, Slate, Meagher & Flom LLP;
    Los Angeles, California

For *Amicus* Multistate Tax Commission:

    Lawrence A. Anderson, Attorney at Law, P.C.; Great Falls, Montana

    Bruce Fort, Multistate Tax Commission; Washington, D.C.

For *Amicus* Montana Chamber of Commerce and Montana Taxpayers
Association:

    Stanley T. Kaleczyc, Jessie L. Luther, Browning, Kaleczyc, Berry
    & Hoven, P.C.; Helena, Montana

Argued:  April 10, 2015
Submitted:  May 26, 2015
Decided:  August 12, 2015

Filed:

_____
Clerk

2

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 The Montana Department of Revenue (Department) appeals a First Judicial District Court, Lewis and Clark County, ruling that Online Travel Companies (OTCs) are not taxable under Montana's Lodging Facility Use Tax, §§ 15-65-101 through 136, MCA, or Sales Tax, §§ 15-68-101 through 820, MCA. We affirm in part and reverse in part.

¶2 We restate the issues on appeal as follows:

1. *Whether the District Court erred in determining that the OTCs are not required to collect and remit taxes on OTC fees under the Lodging Facility Use Tax.*

2. *Whether the District Court erred in determining that the OTCs are not required to collect and remit taxes on OTC fees under the Sales Tax on accommodations and campgrounds.*

3. *Whether the District Court erred in determining that the OTCs are not required to collect and remit taxes on OTC fees under the Sales Tax on rental vehicles.*

4. *Whether this Court's decision should be applied retroactively.*

### PROCEDURAL AND FACTUAL BACKGROUND

¶3 Appellees Priceline.com, Inc.; Travelweb, LLC; Trip Network, Inc.; Orbitz, LLC; Expedia, Inc.; Hotels.com, LP; Hotwire, Inc.; Travelocity.com, LP; Site59.com, LLC; and other unnamed entities ("Does 1 through 1000") are OTCs that provide online travel information and secure reservations for travelers for lodging and car rental services in Montana. The OTCs use a "Merchant Model," whereby they negotiate with suppliers for a wholesale rate on rooms or rental vehicles, then charge customers a higher amount. The difference between the cost to the customer and the wholesale rate paid by the OTC

3

includes taxes on the wholesale rate and an amount retained by the OTC as compensation for its services ("OTC fees").[1] The OTCs collect tax on the wholesale rate and pass the collected tax on to the hotel or rental agency, which in turn remits it to the Department. Currently, the OTCs do not directly remit taxes to the Department, and they do not collect tax on OTC fees.

¶4 In June and July 2010, the Department sent letters to several OTCs, stating, "It has come to our attention that you may not be registered with the Montana Department of Revenue and/or collecting the 4% Lodging Facility Use Tax, the 3% Lodging Facility Sales Tax[,] and/or the 4% Rental Vehicle Sales Tax." The OTCs responded that they had no obligation to register with the Department or to collect the requested taxes. On November 8, 2010, the Department filed suit against the OTCs, arguing that the OTC fees are taxable under both the Lodging Facility Use Tax and the Sales Tax. The OTCs responded by denying responsibility to collect tax on OTC fees received from customers, and contending that they are not taxpayers with regard to the Lodging Facility Use Tax or Sales Tax. The parties filed cross-motions for summary judgment on these issues.

¶5 On March 6, 2014, the District Court granted summary judgment in favor of the OTCs, holding that the plain language of the Lodging Facility Use Tax and Sales Tax statutes contains no basis on which to tax OTC fees. The Department appealed the District Court's order. The Multistate Tax Commission filed an amicus brief in support of the Department, and the Montana Chamber of Commerce and the Montana Taxpayers Association together filed an amicus brief in support of the OTCs. On April 10, 2015,

---

[1] For example, an OTC may pay a hotel a wholesale rate of $100 for a room, and then charge a customer $120. OTC fees are included in the twenty-dollar price difference.

the Court heard oral argument from the parties. On May 15, 2015, the parties filed supplemental briefs on whether the Court must construe and apply the two statutes together. The OTCs requested that, if this Court determines that either statute applies to the OTC fees, we apply our decision prospectively only.

## STANDARDS OF REVIEW

¶6      We review summary judgment orders de novo. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149. Summary judgment is appropriate when the moving party demonstrates an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Smith v. Burlington N. & Santa Fe Ry. Co.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. The interpretation of a statute is a question of law that we review for correctness. *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180. "[S]tatutory language must be construed according to its plain meaning and, if the language is clear and unambiguous, no further interpretation is required." *Infinity Ins. Co. v. Dodson*, 2000 MT 287, ¶ 46, 302 Mont. 209, 14 P.3d 487.

## DISCUSSION

¶7      *1. Whether the District Court erred in determining that the OTCs are not required to collect and remit taxes on OTC fees under the Lodging Facility Use Tax.*

¶8      In 1987, the Montana Legislature adopted the Lodging Facility Use Tax, §§ 15-65-101 through 136, MCA, imposing "on the user of a facility a tax at a rate equal to 4% of the accommodation charge collected by the facility." Section 15-65-111(1), MCA. Section 15-65-101(1), MCA, defines "accommodation charge" as "the fee charged by the owner or operator of a facility for use of the facility for lodging . . . ."

5

The Lodging Facility Use Tax provides, "The owner or operator of a facility shall collect the tax . . . ." Section 15-65-112(1), MCA. A "facility" is "a building containing individual sleeping rooms or suites providing overnight lodging facilities to the general public for compensation." Section 15-65-101(4)(a). The statute does not provide a definition for "owner or operator."

¶9 In 2003, the Department promulgated an administrative rule defining "owner or operator" as "any person or organization who rents a lodging facility to the public and is ultimately responsible for the financial affairs of the facility. Such person may be an individual, corporation, partnership, estate, trust, association, joint venture or other unincorporated group or entity." Admin. R. M. 42.14.101(9) (2003).[2] The Department contends that we should apply this definition and adhere to the Wyoming Supreme Court's reasoning in *Travelocity.com, LP v. Wyo. Dep't of Revenue*, 329 P.3d 131 (Wyo. 2014). In *Wyo. Dep't of Revenue*, the Wyoming Supreme Court determined that the OTCs were "vendors" under a Wyoming statute requiring vendors to collect and remit taxes to the Wyoming Department of Revenue. *Wyo. Dep't of Revenue*, 329 P.3d at 139, 143 (citing Wyo. Stat. Ann. § 39-15-103(c)). Wyoming's tax code defined "vendor" as "any person engaged in the business of selling at retail or wholesale tangible personal property, admissions or services . . . ." *Wyo. Dep't of Revenue*, 329 P.3d at 139 (quoting Wyo. Stat. Ann. § 39-15-101(a)(xv)). The Wyoming Supreme Court determined that the OTCs were vendors because they "control the financial aspects of the [retail] transaction

---

[2] The Department promulgated similar versions of this rule in 2010, Admin R. M. 42.14.101(10) (2010), and 2011, Admin R. M. 42.14.101(10) (2011). The 2010 version of Admin R. M. 42.14.101 took effect on November 27, 2010. Accordingly, we refer to the 2003 version because that is the version that was in effect when the Department filed suit on November 8, 2010.

6

completely." *Wyo. Dep't of Revenue*, 329 P.3d at 143. However, the Department itself defined "owner or operator" as an individual or entity who is "ultimately responsible for the financial affairs of the *facility*." Admin. R. M. 42.14.101(9) (2003) (emphasis added). The OTCs do not participate in the day-to-day bookkeeping of a facility, make management decisions, or decide how a facility will spend its revenue. In short, they are not responsible for the financial affairs of a facility. Accordingly, the OTCs are not owners or operators under the Department's administrative definition.

¶10     In the absence of a statutory definition for "owner or operator," courts in other jurisdictions have applied the dictionary definition. *E.g.*, *Pitt Cnty. v. Hotels.Com, LP*, 553 F.3d 308, 313 (4th Cir. 2009) ("Operator" means "a person who actively operates a business . . . whether as owner, lessor, or employee," and "operate" means "to manage and put or keep in operation whether with personal effort or not.") (quoting *Webster's Third New International Dictionary* 1580-81 (2002)); *City of Branson v. Hotels.com, LP*, 396 S.W.3d 378, 383 (Mo. Ct. App. 2013) (defining "operate" as "[t]o run or control the functioning of . . . [,]" and "operator" as "[t]he owner or director of a business or industrial concern.") (quoting *The American Heritage Dictionary of the English Language* 920-21 (1975)) (changes in original). The OTCs do not fit within the dictionary definition of "owners or operators." They do not possess, run, control, manage, or direct the functioning of a hotel or rental agency.

¶11     The plain language of the Lodging Facility Use Tax provides no basis for taxing OTC fees. The OTCs are not required to collect or remit the Lodging Facility Use Tax on OTC fees. Because we resolve this issue on the plain language of the statute, statutory

7

interpretation rules dictate that no further interpretation of the Lodging Facility Use Tax is required. *Dodson*, ¶ 46.

¶12    *2. Whether the District Court erred in determining that the OTCs are not required to collect and remit taxes on OTC fees under the Sales Tax on accommodations and campgrounds.*

¶13    In 2003, Montana adopted the Sales Tax, imposing a sales tax of "3% on accommodations and campgrounds," and "4% on the base rental charge for rental vehicles." Section 15-68-102(1), MCA. Under § 15-68-102(2), MCA, "The sales tax is imposed on the purchaser and must be collected by the seller and paid to the [D]epartment by the seller. . . . The sales tax must be applied to the sales price." A "seller" is a person who "makes sales, leases, or rentals of personal property or services." Section 15-68-101(16), MCA. A "purchaser" is "a person to whom a sale of personal property is made or to whom a service is furnished." Section 15-68-101(10), MCA. The "sales price" is the "total amount or consideration . . . for which personal property or services are sold, leased, or rented or valued in money . . . ." Section 15-68-101(14)(a), MCA.

¶14    The OTCs argue that the Sales Tax and the Lodging Facility Use Tax have the same scope, so the two statutes must "sink" together. To support their position, the OTCs cite the Department's administrative rule, which provides: "'Sales price' as defined in [§] 15-68-101, MCA[,] is synonymous with the term 'accommodation charge' as defined in [§] 15-65-101, MCA." Admin. R. M. 42.14.101(15) (2010). That administrative rule first was promulgated in 2010, and it did not take effect until after the Department filed suit. Further, this Court is not bound to an agency's definition of a statutory term. *See*

8

*Denke v. Shoemaker*, 2008 MT 418, ¶ 39, 347 Mont. 322, 198 P.3d 284 (stating that Montana courts review an agency's interpretation of law for correctness). The Sales Tax contains no language indicating that the sales price of an accommodation or rental vehicle is the fee charged by the owner or operator. Instead, the statute dictates that "sellers" must collect tax from "purchasers." Section 15-68-102(2), MCA. Unlike the Lodging Facility Use Tax, the Sales Tax specifically provides for taxing services valued in money. The statute defines service as "an activity that is engaged in for another person for consideration and that is distinguished from the sale or lease of property." Section 15-68-101(17)(a), MCA.

¶15    Neither party disputes that the OTCs charge hotel customers a fee for the services they provide, separate from the wholesale rate that the OTCs pay the hotel for a room. The OTCs' receipt of payment from customers for booking hotel rooms unambiguously is "an activity that is engaged in for another person for consideration," § 15-68-101(17)(a), MCA, which the OTCs themselves distinguish from the sale or lease of property. While the statutory definitions of "sale" and "service" distinguish the sale of property from a service, the statute clearly taxes both transactions. Although, at oral argument, the OTCs contended that the Legislature's use of the term "service" was in error, the Department pointed out that "service" appears over forty times in the Sales Tax statute. Accordingly, the Department's administrative interpretation that "sales price" is synonymous with "accommodation charge" is incorrect.

¶16    This determination leads us to further conclude that the Lodging Facility Use Tax and the Sales Tax are inconsistent and incompatible. The statutes, created sixteen years

9

apart, tax two separate transactions. The Lodging Facility Use Tax taxes the user of a facility on the amount that an "owner or operator" of the "facility" charges for a room. Because the OTCs are not owners or operators of facilities, their fees are not subject to the Lodging and Facility Use Tax. By contrast, the Sales Tax taxes the purchaser on the sales price of an accommodation or rental vehicle, which specifically includes the value of services. Accordingly, the statutes need not be construed *in pari materia*.

¶17 The plain meaning of the Sales Tax requires taxing OTC fees.[3] It also requires the OTCs, who are "sellers" because they "make[] sales . . . of services," to collect and remit to the Department taxes on those fees.

¶18 *3. Whether the District Court erred in determining that the OTCs are not required to collect and remit taxes on OTC fees under the Sales Tax on rental vehicles.*

¶19 The OTCs argue that they are not liable for the Sales Tax on rental vehicles because the tax is applied to the "base rental charge for vehicles." The OTCs rely on the

---

[3] We further note that there is support for our decision in other jurisdictions. *See City of Gallup v. Hotels.com, LP*, No. 06-0549-JC, 2007 U.S. Dist. LEXIS 86720, at *5, 13-14 (D.N.M. Jan. 30, 2007) (taxing the entire amount that a hotel guest pays an OTC as the "total amount of rent paid for lodging," collected by the "vendor") (citing City of Gallup Lodger's Tax Ordinance §§ 3-2C-3, 3-2C-7); *City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840-DRH, 2006 U.S. Dist. LEXIS 47085, at *19-20 (S.D. Ill. July 12, 2006) (holding that the "rent charged" is the amount that a hotel room occupant paid to the OTC, not the negotiated wholesale rate) (citing Fairview Heights, Ill., Code § 32-2-2); *Expedia, Inc. v. Dist. of Columbia*, Nos. 14-CV-308 & 14-CV-309, 2015 D.C. App. Lexis 288, at *2-3 (D.C. July 23, 2015) (agreeing with the trial court that a tax on "the sale or charge for any room . . . furnished to transients by any hotel" included OTC fees because it was "a sales tax rather than an operator's tax") (citing D.C. Code § 47-2001(n)(1)(c)); *City of Atlanta v. Hotels.com*, 710 S.E.2d 766, 769 (Ga. 2011) (holding that, "[s]ince the consumer cannot obtain the right to occupy the room without paying the retail room rate charged by the OTC," that retail rate is the "taxable amount or 'rent,'" where "rent" means "the consideration received for occupancy valued in money") (citing City of Atlanta Code of Ordinances § 146-76) (emphasis removed); *Expedia, Inc. v. City of Columbus*, 681 S.E.2d 122, 128 (Ga. 2009) (holding that a "7% excise tax based on the 'charge to the public' for a hotel room" applied to "the price Expedia demands from the consumer for the right to occupy the hotel room and not the price Expedia agrees to pay the hotel for the room") (citing Columbus Code § 19-111).

10

canon of statutory interpretation *expressio unius est exclusio alterius,* which holds that the expression or inclusion one thing implies the exclusion of another, *Black's Law Dictionary* 701 (Brian A. Garner ed., 10th ed. 2014), to argue that the list of charges included under the definition of "base rental charge" (time of use of the rental vehicle and mileage, personal accident insurance, additional or underage drivers, and accessory equipment) is exclusive.

¶20    This Court "construe[s] a statute by reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature," *MC, Inc. v. Cascade City-Cnty. Bd. of Health*, 2015 MT 52, ¶ 14, 378 Mont. 267, 343 P.3d 1208 (quoting *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819; *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003) (internal quotation marks omitted), and "if possible, 'giv[ing] effect to all' of its provisions." *MC, Inc.*, ¶ 17 (quoting § 1-2-101, MCA). Section 15-68-102(2), MCA, requires that the sales tax shall be applied to the "sales price." Interpreting "base rental charge" differently than "sales price" would create an internal contradiction in the statute. *Compare* § 15-68-102(1)(b), MCA (imposing a "sales tax" of "4% tax on the base rental charge for rental vehicles"), *with* § 15-68-102(2), MCA ("The sales tax must be applied to the sales price."). Accordingly, Montana law governing statutory interpretation dictates that "base rental charge" and "sales price" be read as synonymous.

¶21    Further, the definition of "base rental charge" contains a list of charges that the term does *not* include (discounts, airport fees, fuel, intercity drop charges, and

11

government-imposed taxes). Section 15-68-101(3)(b), MCA. This list is also subject to the statutory canon of interpretation *expressio unius est exclusio alterius*. Reading "base rental charge" as synonymous with "sales price" resolves the issue of whether the list of charges included or the list of charges excluded is exclusive. As discussed above, the Sales Tax dictates that the "sales price" includes OTC fees. Accordingly, the list of charges included in the base rental charge cannot be exclusive. The Legislature's use of the term "base rental charge" does not change the Sales Tax's requirement that the OTCs, as sellers, collect and remit to the Department taxes on OTC fees.

¶22    *4. Whether this Court's decision should be applied retroactively.*

¶23    In their supplemental brief, the OTCs request non-retroactive application of our decision, arguing that the imposition of any back sales tax would be inequitable because the Department did not take action to collect the tax prior to 2010, and the OTCs will be unable to seek reimbursement from past customers. Under the Sales Tax, "All sales tax . . . required to be collected . . . constitute[s] a debt owed to this state by the person required to collect the sales tax . . . [,]" § 15-68-110(4), MCA, and "[l]iability for the payment of the sales tax . . . is not extinguished until the tax[] ha[s] been paid to the [D]epartment," § 15-68-501(1), MCA. As discussed above, the plain language of the Sales Tax includes OTC fees. An analysis of whether to apply our decision retroactively or prospectively under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349 (1971), is inapplicable to the present dispute because the Department is entitled to unpaid back sales taxes on OTC fees, just as it would be entitled to collect any other debt.

12

¶24 The OTCs argue that it would be inequitable to apply the Sales Tax retroactively because they relied on the Department's guidance, rules, and forms in considering the Lodging Tax and Sales Tax coextensive. This argument has merit as applied to the enforcement of the Sales Tax prior to the Department filing suit. However, from the time that the Department filed suit against the OTCs, alleging that they were liable for collecting the Sales Tax, the OTCs were unambiguously on notice that the Department considered them liable for collection of the Sales Tax. The OTCs were also aware that, pursuant to § 15-68-110(4), MCA, the Sales Tax is a debt owed to the Department. The fact that the OTCs elected not to collect the Sales Tax in the ensuing years after being placed on notice by the Department's lawsuit does not relieve them of this debt. *See Expedia, Inc. v. District of Columbia*, Nos. 14-CV-308 & 14-CV-309, 2015 D.C. App. LEXIS 288, at *40, 45 (D.C. July 23, 2015) (retroactively applying a sales tax to OTC fees, despite the OTCs' argument that the District of Columbia's claims were prevented by laches, because the OTCs were on notice that the tax might apply to them). The OTCs' situation is not appreciably different from any other debtor who contests the validity of a debt, allows the debt to continue to accumulate during the pendency of the litigation to establish the validity of the debt, and then argues it should be absolved of the accumulated debt after the debt is determined to be valid. If we were to accept such an argument, not only would it result in inequity to the debtee, it would incentivize the debtor to prolong the litigation because the longer the matter remained unresolved, the greater the debt that would be absolved.

13

¶25 Pursuant to § 15-68-110(4), MCA, the OTCs are liable for payment of the Sales Tax from the date the Department filed this lawsuit: November 8, 2010.[4]

## CONCLUSION

¶26 We affirm the District Court's decision that the Lodging Facility Use Tax, §§ 15-65-101 through 136, MCA, does not apply to OTC fees. We reverse the District Court's decision that the Sales Tax, §§ 15-68-101 through 820, MCA, does not apply to OTC fees. The OTCs are liable for the Sales Tax on OTC fees dating back to November 8, 2010.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER

Justice Laurie McKinnon, concurring and dissenting.

¶27 I concur with the Court's conclusion that the OTCs are not responsible for collecting and remitting taxes under the Lodging Facility Use Tax, §§ 15-65-101 through 131, MCA, because they are not "owners" or "operators" of the "facility" as required by the statute. However, the statutory language of the Sales Tax, §§ 15-68-101 through 820, MCA, is ambiguous as to whether an OTC performs a "service for consideration," and reference to legislative history is therefore required. Because the legislative history

---

[4] Because we determine that the OTCs' liability for collecting the Sales Tax commences with the Department's filing of this lawsuit, the issue whether the Department's tax assessment against the OTCs is subject to a statute of limitations is moot.

14

clearly establishes that OTCs were not intended to be part of the tax base, I would not apply the Sales Tax to OTCs. Finally, where two constructions of a tax statute are possible, the question of whether a particular tax applies should be resolved in favor of the taxpayer.

¶28 It is well established that "when the terms of a statute are plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing for this Court to construe." *Cherry Lane Farms v. Carter*, 153 Mont. 240, 249, 456 P.2d 296 (1969); *In re Kesl's Estate*, 117 Mont. 377, 161 P.2d 641 (1945). This Court "must read and construe each statute as a whole so as to avoid an absurd result 'and to give effect to the purpose of the statute.'" *Skinner Enters., Inc. v. Lewis & Clark Cnty. Bd. of Health*, 286 Mont. 256, 271-72, 950 P.2d 733, 742 (1998) (quoting *Christenot v. State*, 272 Mont. 396, 401, 901 P.2d 545, 548 (1995)). Statutes "do not exist in a vacuum. They must be read in relationship to one another to effectuate the intent of the statutes as a whole." *Marsh v. Overland*, 274 Mont. 21, 28, 905 P.2d 1088, 1092 (1995). When more than one statute applies to a given situation, such construction, if possible, is to be adopted as will give effect to all. *Schuman v. Bestrom*, 214 Mont. 410, 415, 693 P.2d 536, 538 (1985).

¶29 The primary operative language of the Sales Tax statute states that a "sales tax is imposed on the purchaser and must be collected by the seller" and "applied to the sales price." Section 15-68-102(2), MCA. The tax is imposed on "sales of the following property or services: (a) 3% on accommodations and campgrounds; (b) 4% on the base rental charge for rental vehicles." Section 15-68-102(1), MCA. In order to ascertain

exactly what the legislature intended to be taxed, we must resort to the definitions of the terms in these two sections.

¶30 "'Sale' or 'selling' means the transfer of property for consideration or the performance of a *service* for consideration." Section 15-68-101(13), MCA (emphasis added). The OTCs are not alleged to be the ones actually maintaining the accommodation and transferring possession or control of the hotel rooms, but they do perform a service related to the transfer of property. The OTCs act as intermediaries to assist hotels and rental car companies in the transferring of property by way of booking leases, rentals, and sales. We must therefore also look to the definition of "service" in order to ascertain whether the OTCs are performing a service that comes within the definition of a "sale."

¶31 "'Service' means an activity that is engaged in for another person for consideration and *that is distinguished from the sale or lease of property*." Section 15-68-101(17)(a), MCA (emphasis added). Within this definition of "service," the word "sale," again, directs us back to "service for consideration" contained in § 15-68-101(13), MCA. "Lease," "leasing," or "rental" "means any transfer of possession or control of tangible personal property for a fixed or indeterminate term of consideration." Section 15-68-101(6)(a), MCA. Although the OTCs, because of their third-party intermediary position relating to the sale or lease of property, may be excepted from the service definition by way of being "distinguished," such a construction is not entirely clear upon the face of the statute. Whether the legislature intended OTCs to be part of the tax base is further obscured by other language in the Sales Tax statute, such as the definition of

16

"sales price," which may not include a deduction for "charges by the seller for any services necessary to complete the sale, other than delivery and installation charges," § 15-68-101(14)(a), MCA, and the definition of "seller," which "means a person that makes sales, leases, or rentals of personal property or services," § 15-68-101(16), MCA.

¶32 Moreover, both chapters 65 and 68 apply to the same subject matter--accommodations and campgrounds—and must be read in relationship to one another. *Skinner Enters.*, 286 Mont. at 272, 950 P.2d at 742. For example, the definitions of "accommodations" in the Sales Tax and "facility" in the Lodging Facility Use Tax are nearly identical. *Compare* §§ 15-68-101(1), and -102(1)(a)-(b), with §§ 15-65-101(1), (4)(a), and -111(1), MCA. Additionally, the tax base for the Sales Tax, as set forth in § 15-68-102(1), MCA, applies to "accommodations," which overlaps with the "accommodation charge" and "facility" definitions of the Lodging Facility Use Tax. As both the Lodging Facility Use Tax and Sales Tax statutes have the same subject matter, they must be construed consistently together and with a construction, if possible, which gives effect to each statute. In light of our conclusion in Issue One that OTCs are not required to collect and remit the Lodging Tax, and given that the Sales Tax is far from clear as to whether OTCs provide a "service," I would conclude that the Sales Tax statute is ambiguous and the Court must resort to legislative history in order to ascertain legislative intent.

¶33 Montana's Lodging Facility Use Tax was established in 1987 to impose upon hotel users a tax to be collected by "[t]he owner or operator of [the] facility . . . ." Section 15-65-112(1), MCA; 1987 Mont. Laws 1557. In 2003, the Sales Tax was

17

enacted as part of the Montana Economic Development Tax Act (Act) introduced by Senate Bill 407. 2003 Mont. Laws 2196. The Act was aimed at reducing individual income tax rates and providing for a "limited" sales tax on "certain property and services." 2003 Mont. Laws 2196. During the 2003 session, the Legislature narrowed the scope of the sales tax provision initially proposed and, ultimately, the Sales Tax covered only accommodations, campgrounds, and rental cars. S.B. 407, 58th Leg., Reg. Sess. (Mont. 2003). We observed in *State v. Montgomery*, 2010 MT 193, ¶ 15, 357 Mont. 348, 239 P.3d 929, that amendments made during a bill's consideration can be analyzed to determine the intent of the legislature. "'One of the most readily available extrinsic aids to the interpretation of statutes is the action of the legislature on amendments which are proposed to be made during the course of consideration in the legislature.'" *Montgomery*, ¶ 15 (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 48:18 (7th ed. 2007)). The Fiscal Note to Senate Bill 407 described the Sales Tax as a "bill [that] would impose a 3% tax on accommodations and campgrounds in addition to the existing accommodations tax[.]" Fiscal Note, S.B. 407, 58th Leg., Reg. Sess. (Mont. 2003). The legislative history of Senate Bill 407 thus establishes that the Montana Legislature did not intend to create a general sales tax, but rather to create a new sales tax on rental cars and increase the tax on accommodations.

¶34 In 2007, by request of the Department of Revenue, House Bill 147 was introduced with a proposal to add intermediaries, like the OTCs, to both the Lodging Facility Use Tax and the Sales Tax and make them subject to filing, collection, and reporting

18

responsibilities. H.B. 147, 60th Leg., Reg. Sess. (Mont. 2007). Specifically, the Department sought to amend both statutes because of its long-standing interpretation that the two taxes should be enforced as one. *See* Admin. R. Mont. 42.14.101(6). House Bill 147 would have substantially revised the existing Lodging Facility Use Tax and Sales Tax to include the services of intermediaries like the OTCs. H.B. 147, 60th Leg., Reg. Sess. (Mont. 2007). However, the Legislature rejected House Bill 147 and the Department's attempt to expand taxes to the OTCs. In my view, the legislative histories of Senate Bill 407 and House Bill 147 demonstrate the intent of the Montana Legislature to create and preserve a limited sales tax in Montana which does not include intermediaries such as the OTCs.

¶35 Even if the legislative history were not determinative, it has long been the settled rule that, in considering a tax statute that is susceptible to two constructions, any reasonable doubt as to the persons or property intended to be subject to a particular tax should be resolved in favor of the taxpayer and against the taxing authority. *Cherry Lane Farms*, 153 Mont. at 249, 456 P.2d at 301. It is impermissible for courts to expand a tax by implication. *In re Estate of Armstrong*, 133 Mont. 328, 331-32, 323 P.2d 595, 597 (1958); *see also* § 1-2-101, MCA (office of a judge is "not to insert what has been omitted or to omit what has been inserted.").

¶36 For the foregoing reasons, both the Lodging Facility Use Tax and Sales Tax are inapplicable to third-party intermediaries like the OTCs. I would therefore affirm the judgment of the District Court in its entirety.

/S/ LAURIE McKINNON

Justice Jim Rice joins the concurrence and dissent.

/S/ JIM RICE